OSWALD OTTENDORFER, Plaintiff, *against* JOHN T. AGNEW *et al.*, Trustees of the New York and Brooklyn Bridge, Defendants.

[SPECIAL TERM].

(Decided November 22nd, 1884).

The extension of the footway of the New York and Brooklyn Bridge from the easterly side of Chatham street to the westerly side of Centre street

in the City of New York,—*Held*, not an addition to the bridge of a new and independent structure without legislative authority, but merely the completion of the plan originally contemplated and never abandoned.

The erection of such footway for use by pedestrians only, over the public street, fifteen feet above the level of the street, with a railing five feet high, and uncovered, leaving an open space of at least one hundred feet between it and an abutting building,—*Held*, to give no cause of action to the owner of such abutting property, as not the slightest injury could by any possibility result to the light, the air, or the approach of the building.

The provisions of the Taxpayers' Act of 1881 (L. 1881, c. 531) and section 1925 of the Code of Civil Procedure, which allow an action against officers or others acting for any municipal corporation, to prevent any illegal official act on their part, or waste or injury to property of such municipal corporation, to be maintained by any taxpayer therein, were intended to reach cases of official misconduct, and do not authorize an action to restrain the completion by such officers of a public work on the ground that compensation has not been secured to the city in which the work is done for property of the city which may be used in the work.

MOTION to vacate a preliminary injunction.

The facts are stated in the opinion.

*Charles F. McLean*, for plaintiff.

*A. J. Vanderpoel* and *Bergen & Dykman*, for defendants.

VAN HOESEN, J.—In selecting the westerly side of Centre street, opposite the Hall of Records, as the westerly terminus of the bridge, the trustees have complied with the law, which provides that the bridge shall be constructed to a point at or below Chatham square, not south of the junction of Nassau and Chatham streets. It is said that the proposed extension of the footway of the bridge, from the easterly side of Chatham street to the westerly side of Centre street, is virtually a project to build an addition to the bridge, inasmuch as the bridge was long ago completed to the point on the easterly side of Chatham street, which the trustees had designated as its westerly terminus. There is force in the proposition that if the trustees had once finished

the bridge they could not afterwards, without legislative authority, undertake a new work, even with the hope of making a valuable supplement to the original plan. But that proposition does not, in my opinion, apply to the facts of this case. Though it is true that the westerly terminus has been at the easterly side of Chatham street, I am satisfied from the affidavits that have been presented to me, that the trustees originally contemplated, and never abandoned, the plan of extending the bridge over Chatham street, and even beyond it. The exact form—the architectural design—of the westerly entrance to the bridge does not, it is true, appear, nor is the very spot at which the bridge shall end designated, with clearness and certainty, upon any map that the trustees filed prior to April 10th, 1884; but yet I see no reason to believe that the trustees ever determined that the westerly terminus of the bridge should be at the easterly side of Chatham street. The force of circumstances did for a time compel them to refrain from any effort to carry out their plan of extending the structure over Chatham street, but no more can be said than that they temporarily suspended their work. It is not, therefore, a new and independent structure that they intend to build. They are merely completing the bridge. It is not necessary that the plan of the footway, a footway over a street in the very heart of the city, should be submitted to the Secretary of War. I do not discuss that objection.

The affidavits submitted by the defendant prove conclusively that Mr. Ottendorfer's apprehensions that his property will be injured by the extension of the footway to the westerly side of Centre street are groundless. Mr. Ottendorfer supposed, when he brought this action, that a house would be built over the triangular space that lies to the south of his valuable property; that locomotives and cars would be run across to the City Hall Park; that cars would be switched in front of his premises; that his windows would be darkened by a towering pile of wood and iron, and that the intolerable noises and nuisances incident to the

making up of railway trains would impair, if not destroy, the rental value of his building.

If such a state of facts existed as Mr. Ottendorfer supposed, I would unhesitatingly grant an injunction to restrain the trustees till full compensation had been made for the injury they were about to inflict, but the truth is that no one of those things that Mr. Ottendorfer anticipated is going to occur. No house is to be built east of Chatham street; no cars will be run across Chatham street; the switching will be done east of the depot of the elevated railway, and all that the trustees intend to do is to extend across Chatham and Centre streets a foot-path for pedestrians. This foot-path will be fifteen feet above the level of the street, and at the sides there will be a railing five feet high. There will be an open space of at least one hundred feet between the uncovered foot-path and Mr. Ottendorfer's building. Not the slightest injury can by any possibility result to the light, the air, or the approach of the Staats-Zeitung Building. In his character as an abutting owner, Mr. Ottendorfer has not therefore any cause of action.

In the character of taxpayer Mr. Ottendorfer complains that the trustees are about to divert the income of the bridge to the purpose of building this footpath. In this it is shown that he is in error. The trustees have the means of building the footway without resorting to any other moneys than those that were duly apportioned for the construction of the bridge, and they deny that they have any intention of applying the income of the bridge to the building of the pathway. As a taxpayer, Mr. Ottendorfer further complains that the property of the City of New York will be injured or wasted if the structure be built across Chatham and Centre streets. He founds his cause of action upon the right given to taxpayers by chapter 531 of the Laws of 1881 and by section 1925 of the Code of Civil Procedure.

The statutes referred to give to any taxpayer a right to maintain an action against the officers, agents, commissioners or other persons acting for and in behalf of the

Ottendorfer *v.* Agnew.

county, town, village or municipal corporation, in which he shall be liable to pay taxes, for the prevention of any illegal official act on the part of such officials, or for the prevention of waste of or injury to any property belonging to such county, town, village or municipal corporation. It is obvious that these sections do not apply to this case. It is plain that the action is to be against the officials implicated, and not against the corporation itself. As a taxpayer of New York, Mr. Ottendorfer could restrain only those trustees who are acting for the City of New York, and would have no cause of action against those trustees who were appointed and are acting for the City of Brooklyn. In this action he asks, as a taxpayer of New York, that officials acting in behalf of the City of Brooklyn be restrained. To this relief he is not entitled. But, laying aside technical objections, it is plain that the statutes in question were intended to reach cases of official misconduct. It cannot be pretended that the construction of the bridge is illegal, or that in taking the proceedings necessary for the completion of the work the trustees are doing an illegal act. In the suit of a taxpayer the complaint must necessarily be, not that the trustee is doing wrong in completing the bridge, but that he is injuring or wasting the property of the city in doing the work before he has secured compensation to the city for such of its property as may be used. But the duty of securing compensation for land taken for public purposes does not devolve upon the trustees. They are interested, as officials, on the opposite side of the question. It is their duty to build the bridge, and it is the duty of a different set of officers to protect the private property of the city from being taken without compensation. A case of malfeasance, misfeasance or non-feasance, cannot, therefore, be made out against the trustees, and the statutes referred to have no application and do not authorize this action.

But can it be argued that, when the legislature has directed that the public streets of a city shall be applied to any public use, the city has a right to demand compensation

for the new public use ?   Yet that is the contention of the plaintiff.   Without discussing the other questions presented by the very elaborate and very ingenious brief of the counsel for the plaintiff, I shall order that the injunction be dissolved, with ten dollars costs.

Order accordingly.