Daniels, J.
This action has been brought by the plaintiffs as tax-payers of the city under the authority of chapter 673 of the Laws of 1887, to restrain the defendants and the City of Buffalo from taking title to a lot of land on Seneca street, at the corner of Hydraulic street, in the City of Buffalo, for the erection of a school-house. The lot proposed to be purchased by the city for the price of $11,000 is in and of itself insufficient in size for the purposes of the school building, but it is intended to supplement it in this respect by adding for the uses of the children an adjacent lot of land previously acquired by the city for the construction of a sewer. The right of the city to appropriate in this manner any part of the land so obtained has been denied by the plaintiffs, upon the ground that it was acquired for an entirely different purpose and has become impressed with a trust requiring it to be devoted to that purpose. The correctness of this position may very well be conceded for the disposition of the case, but the concession would not deprive the city of the right to use the land for the recreation of the scholars attending the school, inasmuch as that can be done without impairing or disturbing in the least degree the use for which the property was secured. The sewer itself, so far as it crosses a portion of the property, is, of course, under the surface of the ground, leaving the entire surface without obstruction in any form or manner whatever, and capable of being used for the object to which it is proposed to devote it, without entrenching in the least degree upon the trust to which the property is required primarily to be applied. And where that may be done the fact that the property may have been obtained for a differ *82 ent purpose will not prevent the city from adding to that purpose an additional use of the property, so far as it leaves the original design undisturbed and unimpaired. The action, consequently, cannot be maintained so far as it depends upon this objection.
But a further objection is presented by the complaint as well as by the evidence to the purchase of this property for the erection of a school building. It is stated to be seventy-nine feet and a fraction fronting on Seneca street, and the evidence of six witnesses who are acquainted with the property, and so far as sales have been made, with the prices produced by property near the same vicinity; have put the value of this land at'not to exceed from $85 to $100 a foot front. It is a somewhat irregular piece, being narrower in its dimensions on the rear than it is upon the front. And these witnesses agree in placing its value not to exceed the sum of $100 a foot. And they are sustained in the judgment expressed by them by the action of the assessors of the city, who assessed the piece of land in 1886 for the sum of $3,040.00, and the following year $3,240.00, the advance being made on account of a building erected upon the ground.
Opposed to this evidence is the testimony of three witnesses, produced on the part of the defendants, who were •engaged in the business of dealing in real estate. They have put the valuation of the land at from $125 to $150 a foot front. But their judgment evidently is not as reliable a guide concerning the value of the property as that of the witnesses who have testified upon the same subject on behalf of the plaintiffs, and who are acquainted with the vicinity in which the property is situated, some of whom own property in its immediate neighborhood, and are acquainted with sales which have there been made. The evidence, accordingly, is not deemed to justify the conclusion that this property was worth any greater sum than the extreme limit mentioned by the witnesses on behalf of the plaintiffs, and that is the price of $100 a foot front upon Seneca street, *83 •which would bring the value of this property up to the sum of $7,965, leaving a difference between its value, and the sum for which the comptroller of the city has agreed to take it, of $3000. For a mere error in judgment involving no greater difference than might exist between persons purchasing property for themselves, the court would not be required •to interfere and restrain the.purchase under the statute, but for so large a difference as appears here, the case requires to be otherwise considered. ■ It involves an appropriation of a large sum of money belonging to the public for which no equivalent is to be received by the city. And it is accordingly in all substantial respects the gift or donation of so much money to the person from whom the property is proposed to be purchased. This the law will not permit. It •requires the same fidelity, care and caution on the part of the individuals representing the public interests, as would be •expected to be used by an individual purchasing the like property for himself and paying for it with his own money. In all public positions the law not only expects, but it exacts this degree of care and fidelity from those representing public interest's. And it is because that expectation has not ■been always realized, and the obligation has not been ■observed, that the statutes have been passed allowing the taxpayers to institute suits in their own names to prevent the misappropriation of public moneys or public property. It has been found necessary, in addition to the obligations imposed upon public officials, to subject them to this restraint •and oversight on the part of the tax-payers, not only to keep down their own expenditures and burdens, but to exact from the officials a complete and careful discharge of the duties imposed upon them by the laws.
. For this purpose the law as it now is in force, after having passed through several amendatory acts intending to render it more effectual and complete, has provided that all officers, agents, commissioners and other persons acting or who have acted for and on behalf of any county, town, village or municipal corporation in this State, may be prosecuted, *84 and an action or actions may be maintained against them,, to prevent any illegal official act on the part of any suck officers, agents, commissioners, or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation by any person whose assessment, or by any number of persons jointly, the sum of whose assessments shall amount to $1000, etc. The act it will be seen, is sufficiently broad to include a case of this description. And in considering a preceding law on the same subject it has been held by the courts that this legislation should be construed with a reasonable degree of liberality (Ayers v. Lawrence, 59 N. Y. 192).
The- law as it has been enacted not only permits the-illegal act or illegal appropriation of public property to be restrained, but it permits also an action in favor of the taxpayers against the officials who may misappropriate public property or funds, to recover back the amount that may have been expended by. means of their inattention or misconduct in the discharge of public duties. And the difference between the selling value of this property and the sum of $11,000 proposed to be paid for it, appears to be sufficient to bring it, not only within the reason and intent, but also within the language of this statute.
By the resolution of the common council authorizing the comptroller to purchase the land on the southeast corner of' Seneca and Hydraulic streets, he was directed to do so atan expense not to exceed $11,000 and upon the approval of the title deed by the corporation counsel. Ho effort whatever, as the proof has been given, was made to bring down the price below the utmost limit mentioned in the resolution. But all that transpired upon this subject was, that the-owner was asked the price he was willing to receive for the-property. He reiterated what had before then been said, the sum of $11,000, and the comptroller, acting through his deputy, stated that it would be taken at that price. This is clearly very far from the course of proceeding which would have *85 been taken by a purchaser for his own personal and private interests. Instead of acceding readily and at once to the price exacted by the owner of the property an effort would have been made, under the circumstances here exhibited, to bring down the price to a more reasonable figure than that mentioned in the resolution, and if that could not be done, the officer should have declined to take the property at the extreme price nominated by the owner. As much would be expected in a private purchase, and the same duty is enjoined upon, and is expected from persons acting on behalf of the public in transactions of this description.
It has been urged on behalf of the city and of the owner that the purchase had so far been completed as to prevent this action from being made effectual. But that is plainly a mistake, for the law requires a contract for the purchase of real estate to be in writing, subscribed by the party who is to be charged for its performance, and that in this instance is the city. If the deed had been accepted and the title had passed, the point presented would have been entirely different. But here it was not so. The common council did not accept the offer of the owner for thp sale of the property, but confided the duty to the comptroller, directing him to make the purchase, but at a price not to exceed $11,000. Up to that time, as no price had been fixed, consequently, there was no contract of purchase on behalf of the city. The resolution was not such a contract for the reason that it did not accept the terms of the owner of the property, but ■confided that to the comptroller, expecting apparently that the price would be less than this sum of $11,000. The interview between the deputy of the comptroller and the owner of the property did not comply with what the statute has required to make a binding agreement. For a mere verbal assent to taking the property at this price was not such a contract as the statute has required to bind either the purchaser or the seller. That is required to be in writing. There was no writing in this instance, but the deputy comptroller simply expressed his assent in words that the place *86 would be taken at the sum of $11,000. This was not binding either upon himself or upon the owner of the property, or upon the city. And the delivery of the deed to the corporation counsel to have it examined, did not in any manner change the legal relation of these parties. The deed itself never was delivered to the city, or to any person authorized to receive it on behalf of the city. The title, consequently, did not pass. The city was not bound by anything which had transpired to take the property, and as-this action was brought when the transaction was in this condition, it was in time to restrain it under the provisions of the statute. ■ As it has been presented it should be so restrained and judgment awarded in favor of the plaintiffs-to that effect, prohibiting the city from accepting the title-to this property at the price proposed to be paid for it.
And the plaintiffs should also recover their costs in the action.
The findings and conclusions will be settled on not less than three days’ notice.
Vote, on Tax-patebs’ Actions.
This is a new branch of the law of municipal corporations,, and one of very general importance. The present rules of law allow an individual tax-payer, who observes a violation of law on the part of those charged with the administration of the public interests, of the town, county, city or incorporated village, to interpose immediately, by action brought on his own name, and obtain an injunction pendente lite, as well as obtain for the municipality such ultimate relief as the muncipality itself might, had the suit been brought in its name. -
This assimilates the right of action of a tax-payer to that long recognized, without the aid of statute, as existing on. behalf of stockholders and members of private corporations, a subject discussed in a note in 20 Abb. N. C. 431.
This new right of tax-payers finds its sufficient support in the statute, and the plaintiff who makes out a case within the statute is entitled to prevail, even though .he has not satisfied the rules of equity procedure generally applicable. But,. *87 on the other hand, the statute gives him a right to invoke all the rules of equity procedure appropriate to the case, if he makes out such a case.
Hence he may have not only a preliminary injunction, as shown below, but also doubtless an order for immediate payment or delivery, by a defendant admitting, by examination or pleading, that he has money or property belonging to the municipality, if the court are of opinion that it ought to be surrendered without awaiting trial. N. Y. Code Civ. Pro. § 717 ; 2 Abb. New Pr. & F. 248 ; and for examination before trial, see 1 Id. 536, 684 ; 2 Id. 420.
In some cases, at least, under the new provisions of the act of 1887, the municipality may be a proper party to the record. If in any case a necessary party, it would seem that earlier statutes like the N. Y. City Consolidation Act, § 1104, requiring presentation of claims before suit, would not apply.
Besides the tax-payer’s act above referred to, and fully stated below, the following section of the Code of Civil Procedure allows a tax-payer’s action.
§ 1925. “ An action to obtain a judgment, preventing waste of, or injury to, the estate, funds, or other property of a county, town, city, or incorporated village of the State, may be maintained against any officer thereof, or any agent, commissioner or any other person, acting in its behalf, by a citizen resident therein, who is assessed for, and is liable to pay, or, within one year before the commencement of the- action, has paid a tax therein. This section does not affect any right of action in favor of a county, city, town, or incorporated village, or any public officer.’’
Another statute has given the attorney-general the right, either on his own motion or by direction of the Governor, to proceed in the name of the people, for similar relief. Where-ever this is done, a tax-payer’s action for the same cause would of course be stayed meanwhile. Code Civ. Pro. §§ 1969-1976.
The general principles that govern the tax-payer’s action, as its line is prescribed by the present statute, and the practice of the courts, are indicated in notes of the cases and the several clauses of the act below.

*88
Notes of Gases on the statute and its clauses.

No remedy before the statute.] Before the act of 1872, a taxpayer had no remedy against the perversion of municipal property. Roosevelt v. Draper, 23 N. Y. 318. Neither was there authority in the State by its attorney-general to intervene, by action, to protect the property rights and interests of municipal corporations. People v. Ingersoll, 58 N. Y. 1; People v. Fields, Id. 491.
Kilbourne v. Allyn and St. John, 7 Lans. 352, and affirmance in 59 N. Y. 21, was an action brought before the act of 1872. It was held by the supreme court at general term, and' by the court of appeals, reversing the decision of the referee before whom the action had been tried, that a court of equity would not sustain an action against the officers of a municipality to restrain an application of moneys raised by tax to the purpose for which the tax was levied. The court of appeals, in a well-considered opinion by Justice Grover, while saying that the question was one of vast practical importance, held that the relief desired must be sought at common law ; that as it was well settled that there is not jurisdiction to restrain the collection of the tax on the ground of illegality of assessment, it must follow that there could be no jurisdiction to restrain the application of the moneys. And he suggested that if such jurisdiction was necessary, it would be for the legislature to provide it by statutes. The act of 1872, though it was passed two years before the decision of the court of appeals, is not noticed in its opinion.
Comins v. Supervisors of Jefferson, 64 N. Y. 626; aff’g 3 Sup'm. Ct. (T. & C.) 296, is another instance of the denial of the power of a court of equity to grant relief, independent of statute.
The leading case against issue of injunction in such cases is Mooers v. Smedley, 6 Johns. Ch. 27.
Acts to be liberally construed in furtherance of the remedy.] In the same year, the court of appeals decided the case of Ayers v. Lawrence, 59 N. Y. 192; rev’g 1 Supm. Ct. (T. & C.) add. 5. This was the first case under the new act of 1872. It was an action to enjoin the commissioners for bonding a municipality in aid of a railroad company ; and it was contended by defendants that the restraint of the issuing of such town bonds was not within the meaning of the statute. The court, in an opinion by Allen, J., emphasized the necessity and the wholesome purpose of the act, as intended to give the taxpayer a concurrent action with the corporation ; and held that the act should be liberally construed in furtherance of the purpose indicated in its title ; and that it was sufficient to embrace every wrong by which taxes may be increased.
*89 Allen, J., says : “ The term waste, as used in the act, includes every wrongful act of mismanagement of the property rights or interests of the municipality causing the loss or damage. The word “ injury ” includes every wrong; everything that is not done rightfully. Under this term, every act in violation of right is included. [3 Bl. Com. 2.] And within the terms of the act, every pecuniary interest • and right which could be wasted, that is, destroyed, misappropriated or misapplied, or that could be injured by the unauthorized or wrongful act of public servants or agents to the damage or loss of the ■corporation or the taxpayers, is included. The prevention of waste or injury “ to any property, funds or estate ” of such county, etc., is the declared purpose of the act. Those words, upon a fair and reasonable interpretation, embrace not - only property and funds in possession, but the credit and the power of taxation and of borrowing money in anticipation of taxation, and every process and means by which the municipal corporation can be charged pecuniarily, or the taxable property within its limits burdened. Municipal corporations seldom have property, funds or estates in possession, to be wasted or injured, save the taxes collected or in process of collection for the purposes to which they are appropriated. The terms are inapplicable in their most usual and ordinary sense, to the property rights and pecuniary interests of a municipal corporation. The legislature have used several words for the sole purpose of embracing every right and interest which might need protection, and in the protection and right use and application of which the tax-payer would have an interest. The word “ property ” denotes the interest one may have in lands arid chattels to the exclusion of others. “ Funds ” may mean cash on hand, stocks, etc., and when “ public funds” are referred to, taxes, customs, etc., appropriated by the government to the discharge of its obligations are understood. It is a name also given to the public funded debt of the government, and in the latter sense a municipal obligation and public debt, created by or in the name of the local or municipal government, may be regarded as technically within the term “funds” of the corporate body. The word “ estate ” has several meanings, and in its most extreme sense signifies everything of which riches or fortune may consist. [ Whar. Law Dict.; Bouv. Law Dict.; Ketchum v. City of Buffalo, 14 N. Y. 356.] The terms used in the ■connection in which they stand, cannot, without an utter disregard of the rights that were intended to be preserved and protected, be held to mean anything else than every interest and right affecting the burdens, the pecuniary interests, the credit or the obligations of the municipality, and it would be a perversion of the act to give the lan-
*90 guage a restricted interpretation which would place beyond its protection the power of creating a public debt.”
This rule of liberal construction was referred to as authoritative in-the case of Metzger v. Attica, &c. R. R. Co., 79 N. Y. 171, sustaining, an action under L. 1872, c. 161, to restrain a bank holding town bonds-issued to it by the commissioners (who were also joined as defendants), to have the bond cancelled, and to restrain the town-collector, another defendant, from paying over as interest, moneys collected* therefor.
Under the act of 1872 an action would lie to restrain the* trustees of a village from making-an ultra vires purchase of land for a cemetery. Latham v. Richards, 12 Hun, 360. So also now.
Object of action.] By the act of 1887, the objects for which-these actions may be brought are thus defined, “to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore- and make good, any property, funds or estate of such county, town, village or municipal corporation.”
Another clause as to relief against judgments, awards, etc., is stated below.
Enough to show a case within the statute.] Under this act the-court is not confined to the principles upon which the courts of equity ordinarily proceed in actions to cancel written instruments. The action is an equitable remedy given by statute ; and the only question is whether plaintiff has shown himself to be within the provisions of the-statute. Hills v. Peekskill Sav. Bk., 26 Hun, 161 (holding that a tax-payer of a town could maintain an action to restrain the supervisors from levying a tax to pay town bonds which were illegally issued, and to restrain the holder of the bonds from negotiating-them).
It is not a sufficient objection to an action under the statute, that the illegality relied on would be a good defense to the municipalitj* at law. The statute remedy is not confined to acts where the town might have the same relief. Osterhoudt v. Rigney, 98 N. Y. 222.
It was held in Alvord v. Syracuse Bank, 34 Hun, 143, that the pliantiff in such an action was not entitled to sustain the action when it could not be sustained on his own behalf under the statute. L. 1872;. Cobe Civ. Pro. § 1925.
That action was originally brought against the bank, a holder of part of an issue of town bonds, and an individual owning another part, and the railroad commissioners, who, however, did not appear in the action. The court found that the alleged owners were bona fide owners and' holders, and dismissed the action. The object of the action was ta> *91 cancel the bonds. The court say, “Neither the statute of 1872 nor section 1925 authorize a tax-payer of a municipality to maintain an action against a bondholder who is a mere private individual, doing or threatening no special injury or damage to the municipality in which the tax-payer is interested. Therefore the appeal now before us discloses an attempt to have this court declare invalid bonds held in good faith, bought in good faith by two defendants, at the instance of a taxpayer who has not made a town officer or agent a party to the appeal. We are of the opinion that the appellant has no standing in court which entitles him to have the question, raised upon the merits of his bill as between him and the town officer or agent, considered.”
[But this decision is not in harmony'with general principles so far as it treats the default of the officer or his failure to litigate the appeal, any ground for sustaining the defense of the bond holder. It must rest/ on the independent right of the bondholder, as a bona fide holder.]
Westbrook, J., in a special term case, Tappen v. Crissey, 64 How. Pr. 496, held that a doubtful case as to which of two bodies of men claiming to be a board of officers was the legal one, did not make-proper ground for an injunction in an action under the act of 1831, c. 531.
Substantial injury no longer need be shown.] The statute (L. 1881, c. 531) authorizes the action in order to restrain “ any illegal official-act,” thus enabling the tax-payer to maintain the action if he shows a threatened illegal official act even without showing any substantial injury to the municipality thereby. Thus, where a county treasurer is-accustomed to retain his fees before audit, an action lies to enjoin him from so doing, irrespective of the consequences of such violation of the law. Warrin v. Baldwin, 105 N. Y. 534; rev’g 35 Hun, 334.
Act not to be used for mere private purpose.] As the object of the statute (L. 1872, c. 161) is to enable a taxpayer to prevent waste or injury to the property of the corporation, if such is not the real object of the action the court should refuse to exercise jurisdiction. If the action is in reality for the benefit of an individual, it cannot be sustained. Hull v. Ely, 2 Abb. N. C. 440. So held, refusing an injunction against the sale of a ferry franchise, it appearing that the real parties in interest as plaintiff were those now exercising the franchise, and suing to protect themselves in its enjoyment.
One who was an unsuccessful bidder at a sale by a city of a ferry franchise, was, however, held in Starin v. Mayor, 42 Hun, 649, entitled to bring an action under the statute to set aside and cancel the sale to another person, on the ground that if was irregular and conducted ins violation of law.
*92 In Lutes v. Briggs, 5 Hun, 67, the object of the action was to ¡restrain proceedings for a local improvement, alleged to be in excess of the village ordinance or in part in excess thereof; and the supreme •court distinguished the case from the early cases against equitable relief, ■on the ground that here the fund in question had been collected, and its application was a question of private interest among the owners ■¡affected by the improvement; and that the action might be maintained, notwithstanding the city charter provided a remedy for repayment, which those interested in the fund collected might have resorted to. "The court of appeals in 64 N. Y. 404, reversed this decision, but held "that the case was not within theact of 1872. Miller, J., says, “ There is no claim that the commissioners are likely to waste the fund in question, and that act was intended to provide for cases where the remedy was doubtful as to what person or party could maintain an action, and not to a case where the statute directly pointed out the mode of relief,” as in this case the charter did.
Denial of private right to compensation.] The Tax-pavers’ Act- (L. 1881, c. 531, and Code Civ. Pro. § 1925), were intended to reach cases ■of official misconduct, and not to sustain an action to enjoin a public work on the ground that it is prosecuted without previous proceedings to provide compensation. Ottendorfer v. Agnew, 13 Daly, 16 (Sp. T.).
And see to the effect that such acts of a municipal corporation can raise an implied contract on which the corporation will be liable,— Poillon v. City of Brooklyn, 101 N. Y. 132.
Plaintiff.] By the present act the action may be brought “by •any person whose assessment, or by any number of persons jointly, the sum of whose assessments shall amount to one thousand dollars, and who shall be liable to pay taxes upon such assessment or assessments ■in the county, town, village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon any assessment or assessments •of the above named amount within one year previous to the commencement of any such action or actions.” L. 1887, p. 885, c. 673.
The original act of 1872, allowed an action against any officers, agents, commissioners or ■other persons acting for and on behalf of any county, town or municipal corporation, to prevent waste or injury to its property, funds or estate to be brought “by any person residing therein,” .... assessed *93 for and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of such action. L. 1872, v. 1, p. 467, c. 161.
*92 The act of 1879, c. 526, allowed the action to be brought “by any person, or any number of persons jointly, residing in such county, town or municipal corporation, assessed for the amount of ten thousand dollars, and. liable to pay taxes upon such assessment therein, or who shall together be assessed for that amount and so *93 liable, or who have either separately or together paid taxes, therein upon an assessment of that amount within one year previous to the commencement of any such action or actions.”
Defendants.] By the act of 1887, “All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf' of any county, town, village or municipal corporation in this State, and each and every one of them, may be prosecuted, and an action or-actions may be maintained against them”—as above stated.
Another clause declares that: “ the provisions of this act shall apply as well to those cases in which the body, board, officer, agent, commissioner or other person above named has not, as to those in which it. or he has jurisdiction over the subject-matter of its action.” L. 1887, p. 887, c. 673, § 1.
The original act did not name villages, and did not extend to those-who had ceased to act officially.
Single officer and ineffectual restraint.] Under section 1925 of the Code of Civil Procedure, which allowed the action “to prevent waste,”' it might be doubted whether an injunction could go against an officer if enjoining him would not prevent the threatened waste, as where he-was a supervisor of the town and only one of the board for the county, the others not being enjoined. But under the act of 1880, c. 435, allowing the action to prevent an officer from doing or “conniving” at a fraudulent act, such an injunction could be granted. Hills v. Peekskill Sav. Bk., 26 Hun, 161. So also now.
Parties.] In an action brought by tax-payers under the act of 1879-to vacate, on the ground of irregularity or fraud, audits of town accounts made by the town board of audit, and to restrain the levying of a tax for their payment, the persons in whose favor the audits are-made are proper and necessary parties. The enumeration in the statute of persons against whom actions under it may be brought, does not dispense with the necessity of joining all other persons-who will be directly affected by the judgment and are necessary parties to a complete determination of the controversy. Osterhoudt v. Supervisors of Ulster, 98 N. Y. 239. So also now.
Joining officer's bondsmen.] “ Whenever by the provisions of this section an action may be prosecuted or maintained against any officer or other person, his bondsmen, if any, may be joined in such action or proceeding, and their liabilities as such enforced by the proper judgment or direction of the court; but any recovery under the provisions of this act shall be for the benefit of and shall be paid to the officer entitled! *94 by law to hold and disburse the public moneys of such county, town, village or municipal corporation, and shall, to the amount thereof, be credited the defendant in determining his liability in the action by the ■county, town, village, municipal corporation or public officer. L. 1887, p. 887, c. 678, § 1.
Audit, if illegal.] Under the statute (1872), any tax-payer may maintain an equitable action to vacate the audit of an illegal claim which a board of audit had no authority or jurisdiction to audit, or when the audit was fraudulent or collusive, and to restrain the collection of a tax therefor. Osterhoudt v. Rigney, 98 N. Y. 222.
Payment without audit.] An illegal payment or retention of fees, before they have been audited, may be enjoined. Warrin v. Baldwin, 105 N. Y. 534; rev’g 35 Hun, 334.
Awards, judgments and audits.] The rule, that the acts of a board ■of audit within its jurisdiction are, in the absence of fraud and collusion, final and conclusive and cannot be questioned collaterally, has not been changed by statute of 1872. Osterhoudt v. Rigney, 98 N. Y. 222.
After the act of 1881 added a provision allowing the court in case the waste consisted in directing or permitting judgment by default, or without proper presentation of defense, if any, to open the judgment, or ■enforce restitution, the court should not enjoin the ordinary enforcement of a judgment effected by including it in a tax, unless the judgment is shown to be collusive or on default, or a defense not already fully considered is presented. Lee v. Supervisors of Jefferson, 62 How. Pr. 201.
New provision in act of 1887.] In case the waste or injury complained of consists in any board, officer or agent of any county, town, village or municipal corporation, by collusion or otherwise, contracting, auditing, allowing or paying, or conniving at the contracting, audit, allowance or payment of any fraudulent, illegal, unjust or inequitable claims, demands, or expenses, or any item or part thereof against or by such county, town, village or municipal corporation, or by permitting a judgment or judgments to be recovered against such county, town, village or muncipal corporation, or against himself in his official capacity, either by default or without the interposition and proper presentation of any existing lega or equitable defenses, or by any such officer or agent, retaining or failing to pay over to the proper authorities any funds or property of any county, town, village or municipal corporation, after he shall have ceased to be such officer or agent, the court may, in its discretion, prohibit the payment or collection of any such claims, demands, expenses or judgments, in whole or in part, and shall enforce the restitution and recovery thereof, if heretofore or hereafter paid, collected or retained by the person or party heretofore *95 or hereafter receiving or retaining the same, and also may, in its discretion, adjudge and declare the colluding or defaulting official personally responsible therefor, and out of his property and that of his bondsmen, if any, provide for the collection or repayment thereof, so as to indemnify and save harmless the said county, town, village or municipal corporation from a part or the whole thereof; and in case of a judgment, the court may, in its discretion, vacate, set aside and open said judgment, with leave and direction for the defendant therein to .interpose and enforce any existing legal or equitable defense therein, under the direction of such person as the court may, in its judgment or order, designate and appoint. L. 1887, p. 886, c. 673, § 1.
Preliminary injunction.] The tax-payers’ act (1872), by superseding the former decisions that injunction in equity is not the proper remedy, sanctions the issue of a preliminary injunction where a prima facie case is made. Hurlburt v. Banks, 1 Abb. N. C. 157; aff’d, in effect, as People ex rel. Com’rs of Washington Park v. Bank, 67 N. Y. 568.
— against others than the officers.] Where the court have power to ■enjoin an officer from paying an illegal claim, they have power to enjoin the holder of the claim from transferring it pendente lite. Hills v. Peekskill Sav. Bk., 26 Hun, 161.
Security.] The words of the present statute are as follows: “ Such person or persons, upon the commencement of such action, shall furnish a bond to the defendant therein, to be approved by a justice of the supreme court or the county judge of the county in which the "action is brought, in such penalty as the justice or judge approving the same shall direct, but not less than two hundred and fifty dollars, and to be executed by any two of the plaintiffs, if there be more than one party plaintiff, provided said two parties plaintiff shall severally justify in •the sum of five thousand dollars. Said bond shall be approved by .said justice or judge and be conditioned to pay all costs that may be awarded the defendant in such action, if the court shall finally determine the same in favor of the defendant. The court shall require, when the plaintiffs shall not justify as above mentioned, and in any ■case may require two more sufficient sureties to execute the bond above provided for. Such' bond shall be filed in the office of the county clerk of the county in which the action is brought, and a copy shall be served with the summons in such action. If an injunction is obtained as herein provided for, the same bond may also provide for the payment of the damages arising therefrom to the party entitled to the money, the auditing, allowing or paying of which was enjoined, if the court shall finally determine that the plaintiff is not entitled to such injunction. L. 1887, p. 886, c. 673, § 1.
Westbrook, J., in a special term case (Tappen v. Crissey, 64 How. *96 Pr. 496), had held that the giving of the security required on granting; an injunction under Code Civ. Pro. § 620, did not dispense with the necessity of giving also the bond required by the act of 1881.
Obligors.] The act .of 1879 required two-sureties under the Fidelity and Surety Company Act (L. 1886, c. 416, and Code Civ. Pro. § 811), such a company might take the place of both. But the act of 1887 in effect requires the bond to be executed by the plaintiff' or plaintiffs, except that it may be by any two of the plaintiffs, if there be more than one party plaintiff, provided such two severally justify in the sum of $5000.
The court may in any case require two or more sureties in addition, and must do so unless there are at least two plaintiffs signing and justifying in at least $5000.
Obligees.] Previously the bond (1879) was required to run to “such town, county or municipal corporation” instead of as now “to-the defendant.” This change seems intended to secure a bond protecting the officers and other persons joined as co-defendants. See-1 Abb. New Pr. & F. 65, 470. •
Penalty.] The high sum in which security was required by the act of 1879, is now reduced by the clause leaving the amount to be fixed by the judge, but at not less than $250. If the security on granting injunction is included in the same instrument, the amount thereof is to-be fixed by the judge, and the aggregate minimum will usually be not less than $500. The better practice is to ask the judge to fix the sum, and state in the approval that the bond is approved as ■ to form and amount, and as to sureties, and recite in the injunction that the plaintiff has given the security required by law, by bond approved and filed, etc.
Approving judge.] By the former act, 1879, only a justice of tne supreme court could approve the bond. Under the present act it must be approved by a justice of the supreme court or the county, judge of the county in which the action is brought.
Amending security.] Westbrook, J., in the special term case above mentioned (Tappen v. Crissey), held, following a general term decision in such a matter in 1882, that the court had power, on motion to vacate the injunction for want of the bond required by the statute, to allow the defect to be supplied.
Pleading.] Under the clause of the act, 1872, allowing an action to be brought by any person residing in the town assessed for and liable-to be taxed therein, within one year previous, etc., an allegation that the plaintiffs are residents and tax-payers there, and owners of real and personal property liable to assessment and taxation therein, before and<. at the time of the occurrences mentioned in the complaint, is suffir *97 cient, though not expressed in the precise words of the statute. It is not essential, even at common law, to use the precise words of a statute ; much less under the Code of Procedure. Ayers v. Lawrence, 59 N. Y. 192.
Records as evidence.] All book^ of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation in this State, are hereby declared to be public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer. L. 1887, p. 880, c. 673, § 1.
Rxtrinsic evidence.] In Sherman v. Village of Clifton Springs, 27 Hun, 390, the court, in refusing to sustain an action for trespass or conversion against the village collector of taxes, upon evidence showing the invalidity of the claims for which tax was assessed, comment thus upon the remedies for illegality : “ It may be inquired in this connection, what remedy has the tax-payer to shield himself from the payment of taxes assessed for an illegal or unauthorized purpose ? We answer: 1st. That if he moves seasonably, he has the right to review the action of the assessors by certiorari (Swift v. City of Poughkeepsie,. 37 N. Y. 511-516). 2nd. He has the right to bring an action in equity under section 1925 of the Code of Civil Procedure, and to have the roll adjudged illegal and void. In such an action the court had full power to inquire, dehors the record, as to the validity of the claim or claims for which the tax is assessed.”
Action by the people.] The Tilden Act, otherwise known as the Peculation Act, passed to enable the State to sue where the municipality would not, was in substance embodied in Code Civ. Pro. § 1969, etc. This provision gives the people a concurrent remedy for municipal malversation, and authorizes the action to be brought in any court, whether of this State or another jurisdiction. And it declares that upon the commencement of such an action the cause of action shall' vest in the State, and the recovery may, after paying the expenses, be applied as justice requires. If another action is brought, pending one by the people, the court may stay it and may bring the parties in.
As to what are classed as municipal purposes for which, in the present state of the law, money may be expended, see Lucia v. Village' of Montpelier, 60 Vt. 537; s. c.,1 Law. Reports, 169, with note), holding that under a power of supplying water for fire and domestic uses, the court would not enjoin the allowance of the use of part of the water for running motors,—and Bates v. Bassett, Id. 530, refusing to sus *98 .tain replevin against the town collector for a tax to pay for erecting a new town house, which included an opera hall with stage and scenery and rooms to rent, and included also the expense of repairing the old hall to be rented. See, also, People ex rel. Murphy v. Kelly, 5 Abb. N. C. 383 ; s. c., 76 N. Y. 475 (Brooklyn Bridge case); Hequembourg v. City of Dunkirk, 49 Hun, 550 (Electric Light for private as well aa public use); Button v. Ely, 46 Id. 100 (Leasing of superfluous rooms).