(14 Misc. Rep. 258.)

### TERRELL v. STRONG et al.

(Supreme Court, Special Term, New York County. August, 1895.)

1. CONTRACTS FOR PUBLIC WORK—FRAUD OF COMMISSIONERS.
   The mere fact that the commissioners awarded a contract for a public improvement to one not the lowest bidder is insufficient to establish the charge that they acted fraudulently or illegally.

2. SAME—EXERCISE OF IMPROPER INFLUENCE BY COMMISSIONER.
   The charge that the aqueduct commissioners of New York City awarded a contract to M., instead of to B., who was the lowest bidder, because of prejudice of one of the commissioners against B., was supported by the statement of B. that third persons had told him that the commissioner had expressed such prejudice. The persons named denied having made such statements to B., and the commissioner made affidavit that he neither expressed nor held such prejudice. It also appeared that he alone voted against awarding the contract to M. *Held*, that the facts did not show the exercise of any improper influence by him against B.

3. SAME—NOTICE TO MAYOR OF COMMISSIONERS' MEETING.
   The validity of an award by the aqueduct commissioners of a contract for the building of a reservoir is not affected by the fact that the mayor was not notified of the meeting at which the award was made, no such notice being required by law.

4. SAME—DISCRETION OF COMMISSIONERS.
   Laws 1883, c. 490, § 28, gives the commissioners the right to reject any or all the bids offered for public work, and to select "the bid or proposal, the acceptance of which will, in their judgment, best secure the efficient performance of the work"; and the discretion so vested in them will be controlled by the courts only when necessary to prevent fraud, injustice, or the violation of a trust.

Action by Isaac H. Terrell against William L. Strong, mayor, and others, to set aside a contract made by the aqueduct commissioners. Plaintiff moves for an injunction. Denied.

Browne & Sheehan (Edward Browne and William F. Sheehan, of counsel), for plaintiff.

Francis M. Scott (William L. Turner and Terence Farley, of counsel), for defendant.

O'BRIEN, J. Plaintiff, as a taxpayer, brings this action to obtain a judgment preventing waste and injury to the city funds. It appears that the aqueduct commissioners advertised for sealed bids or proposals for the construction and building of a reservoir at Jerome Park; that among a number of other bids received were those of John O'Brien for $5,297,370, and John B. McDonald for $5,472,080; that O'Brien's bid is $174,710 less than McDonald's, and was the lowest bid made for the work. The estimate of the chief engineer was $5,882,690. It is alleged that the commissioners not only arbitrarily and wrongfully refused to award the contract to O'Brien, but wrongfully awarded it to McDonald, and that their action was influenced by unlawful means, and against the interests of the city; that such award was fraudulently made for the benefit of a favored bidder; that the giving of $174,710 more than they could procure the work to be done for is a waste of public funds. If these charges were sustained, then undoubtedly the court would enjoin the making of the contract with McDonald. I have looked in vain for any evidence to sustain the charges that the commissioners acted "fraudulently," or were influenced by "unlawful means," nor do I think that plaintiff seriously contends that there are any facts upon which such conclusions can be supported.

Without spending time on these, we find that the greatest stress is laid upon the claim of favoritism for McDonald, and prejudice against O'Brien. Apart from the fact that the contract was awarded him, there is no evidence of partiality or favoritism toward McDonald. The charge of prejudice, which, it is said, one of the commissioners had against O'Brien, is supported by the latter's statement that third persons told him that one of the commissioners had expressed a prejudice. These persons deny that they had made such statements to O'Brien, and we have the affidavit of the commissioner accused, which asserts that he never made such statements and never entertained such prejudice. It is to be noted that such commissioner did not vote to award the contract to McDonald, and did not succeed in getting his associates to vote with him in favor of the contractor whom he regarded as the best. Even if he entertained such prejudice, it is quite evident that this commissioner had no such controlling influence over his associates as to prevent their asserting their individual wills and judgments. These men, for character and ability, have been selected to conduct a great public work, and it would be a serious reflection on the independence and competency of the entire commission, and justly subject them to removal, if it could be shown that they permitted

themselves to be improperly swayed and controlled by one of their number. That they were not so influenced is clearly apparent from the fact, already stated, that the commissioner whom it is suggested had such influence stood alone on the final vote making the award to McDonald.

The absence of the mayor, and the failure to properly notify him of the meeting at which the award was made, is claimed to be fatal to the award. The by-laws of the aqueduct commission provide that the regular meetings shall take place on Wednesdays, and that no other notice of the meeting shall be required. It appears, moreover, that the mayor, from the beginning of the year, did not attend any of the meetings of the commission, nor was his presence necessary for the transaction of business, for at common law and by the Revised Statutes (2 Rev. St. p. 555, § 27, as amended by Laws 1874, c. 321) the rule is the same as is provided by section 46 of the consolidation act, "that a majority of the members of a board * * * shall constitute a quorum to fully perform and discharge any act or duty, * * * with the same legal effect as if every member of any such board had been present." Here a notice of the meeting was sent to the mayor's office during his absence from the city. As shown, even if no notice was sent at all, this would not invalidate the action taken by the other commissioners at a meeting regularly held and at which a quorum was present.

This brings us to the real and only serious question, based on the contention that the award as made is a waste of public funds. At first blush it would seem as though the court should require some satisfactory explanation before it would sanction a transaction in which $175,000 of public funds was seemingly unnecessarily expended for a public work. The extent to which the court can go in interfering with these commissioners must depend upon the statutes creating them, construed in the light of controlling decisions. By Laws 1883, c. 490, § 28, it is provided that, after the bids or proposals shall have been opened, the commissioners may "select the bid or proposal the acceptance of which will, in their judgment, best secure the efficient performance of the work, or they may reject any or all such bids." And section 30 reads:.

"No contract shall take effect until the commissioners, or a majority of them, shall certify thereon in writing that its acceptance will, in their judgment, best secure the public interest and the efficient performance of the work therein mentioned."

Here the statute does not require the commissioners to award the contract to the lowest bidder, and those who voted in awarding the contract swear that the acceptance of McDonald's bid will, in their judgment, "best secure the public interest and efficient performance of the work." This aqueduct act has been construed in at least two cases in this court. In the case of Ebling v. Commissioners, where, singularly enough, the plaintiff there sought, on much the same grounds as are here presented, to prevent the award of a contract to O'Brien & Clark on the grounds that their bid was not the lowest and that they were favored contractors, Mr. Justice

Barrett, in denying the motion for a preliminary injunction, among other things, said:

"The law permits the commissioners to reject all the bids which may be presented to them. It also permits them to accept whatever bid they think will produce the greatest efficiency in the performance of the work. That is the legislative policy upon which this particular work is being constructed. We have not power, sitting as a court of equity, to limit the range of selection on the part of these commissioners. * * * The difficulty here, as I said before, is that the legislature has given a wide discretion to these commissioners. The usual policy of the law has been abandoned, namely, that the work should be given to the lowest bidder. If the commissioners think that the giving of the work to one who is not the lowest bidder will insure efficiency, they have the power to give it to him."

And, in speaking of what should appear to justify the court's interference, he continues:

"That the work was given to one who is not the lowest bidder, fraudulently, or upon some corrupt understanding."

This, and other cases that might be cited, show that a court of equity has no right to interfere with and control the exercise of the discretionary power vested in a public body such as the aqueduct commission. Undoubtedly, it will interfere, when necessary, to prevent fraud, injustice, or the violation of a trust, and whenever it is shown that those in whom the discretion is vested are prepared, illegally or corruptly, to trample upon rights or sacrifice interests intrusted to their care, then the courts will interfere to prevent the consummation of a fraud. The law presumes honesty rather than fraud, and it will not, in the absence of proof, conclude that a discretion vested in a public body is being fraudulently exercised. Here we have charges of illegality and fraud, but these are mere conclusions unsupported by a single fact other than the one that there is a lower bidder than the one to whom the contract is to be awarded. If this were enough, then the law which expressly permits the commissioners to select any bidder, whether the lowest or not, would be nullified.

I have been referred to many cases by plaintiff's counsel, among them Winkler v. Summers, 51 Hun, 636, 5 N. Y. Supp. 723. That arose under the charter of Buffalo. It gave the common council power to purchase lands for school and other purposes. The common council, after examining various proffered sites, selected one which the owner offered to sell for $11,000, and at which sum the council directed the comptroller to purchase. Upon an application for an injunction to restrain the sale, it was shown that the property was not worth more than $8,000, and that no effort to obtain the property at its real value was made. Injunctive relief was therein awarded on the ground that it involved "an appropriation of a large sum of money belonging to the public, for which no equivalent was to be received by the city." The distinction between that case and the one at bar is apparent. Here the bid of McDonald was less than the engineer's estimate, and, whether his or O'Brien's bid be selected, it can hardly be claimed at this time that the city will not receive an equivalent. It is impossible, now, to determine whether

the engineer of the commission or the contractors are right in their estimates, and this is made clear when we recall that the bids made by the various contractors for this work vary from a little over $5,000,000 to over $13,000,000. The legislature left the determination of the persons who should do the work and the price they should receive to the judgment and discretion of the commissioners, and it has never been held, even though they erred or were mistaken, that a court could substitute its own for the judgment and discretion of the commissioners.

I have attempted already to point out what are the limitations to the general rule that a court of equity has no right to interfere with and control the exercise of discretionary power vested in a public body. But I might well have rested my conclusion upon Judge Barrett's reasoning in the case cited, and the well-considered case in the general term, Second department, recently decided, of Adamson v. Railroad Co., 89 Hun, 261, 270, 34 N. Y. Supp. 1073. There the common council of Brooklyn awarded a franchise for a street railway to the defendant, though they had a higher offer from another company of many thousands of dollars for the same franchise. In reversing the injunction order the court, among other things, said:

"It would be a very narrow view of the powers and duties of municipal officers that would confine their exercise to the aggrandizement of the local treasury. Financial considerations are not alone to control in granting permission to prosecute the various enterprises conducted by individuals and private corporations within the municipality."

And, in speaking of the statutes which gave a right of action in favor of taxpayers, reference is made to the case of Talcott v. City of Buffalo, 125 N. Y. 286, 26 N. E. 263, wherein it was said:

"The terms 'waste' and 'injury,' used in this statute, comprehend only illegal, wrongful, or dishonest official acts, and were not intended to subject the official action of boards, officers, or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident, or based on errors of judgment, to the supervision of the judicial tribunals. It is believed that no action was ever maintained under this statute with the sanction of this court without some proof or allegation that the official act or proceeding complained of was without power or was tainted by corruption or fraud."

I deem it unnecessary to quote further from that case or to multiply authorities, as it seems reasonably free from doubt, upon the facts here appearing, that the court would not be justified in interfering with the commissioners.

Motion for an injunction is accordingly denied.