TEUNIS P. OSTERHOUDT, Tax Payer, etc., Respondent, *v.* JOHN RIGNEY et al., Appellants.

An action to vacate an audit, by a town board of audit, of a claim which the board had no authority to allow, or where the audit was fraudulent and collusive, and to restrain the collection of tax therefor, may properly be brought by a tax payer under the act of 1872 (Chap. 161, Laws of 1872), "for the protection of tax payers."

The right to maintain an action under said act is not confined to cases where before its passage an equitable action could have been brought by the town for the same relief.

*It seems* that said statute has not abrogated the rule that the acts of a board of audit within its jurisdiction, in the absence of fraud or collusion, are final and conclusive, and cannot be questioned in a collateral proceeding.

An excessive allowance, or an erroneous conclusion by the board upon the facts, does not constitute waste or injury to the property of the town within the meaning of the act.

A town board of audit has no power to audit and allow claims which have been passed upon and rejected by a prior board.

*People, ex rel. Hotchkiss,* v. *Bd. of Supervisors* (65 N. Y. 222), distinguished.

*It seems* that the rule forbidding the reopening of a matter, once judicially determined upon the merits by a competent jurisdiction, applies as well to the decisions of special and subordinate tribunals as to the decisions of courts exercising general judicial powers.

*It seems* however that where a proper claim has been disallowed because not presented in proper form, or not properly verified or accompanied by proper vouchers, or for any reason not involving a determination on the merits, it may be presented to and audited by a subsequent board.

Where overseers of the poor in a county which had adopted, pursuant to the act of 1846 (Chap. 245, Laws of 1846), the provisions of the act of 1845 (Chap. 334, Laws of 1845), for the relief of the poor, instead of pursuing the system provided by the act, procured supplies upon their own credit, and presented their accounts annually to the board of audit for allowance, the amount audited being put into the schedule of accounts and levied by the board of supervisors with other town charges.   *Held,* that the failure to follow the requirements of the act did not deprive the overseers of any power to provide for the relief of the poor, and the advances so made were properly audited and charged against the town ; that while the overseers were not bound to furnish supplies upon their own credit, and the act contemplates that they shall be put in funds in advance, under the provision therein (§ 7), authorizing the town board of audit to include in the estimate such sum as shall be necessary "to supply any deficiency in the preceding year," it had power to audit all sums fairly expended where no provision had been made therefor the preceding year.

The omission of an overseer of the poor to bring the overseer's book before the town board, and an audit of his account without a comparison of the items in the account with those in the book, are irregularities merely and do not render the audit invalid.

Where audited claims of an overseer of the poor were included in the general schedule of town accounts, and in the warrant of the supervisors the amount was directed to be paid to the supervisor of the town, with direction to him to pay to the overseer,—*Held,* that this was equivalent to a direction to pay to the overseer, and so was a substantial compliance with the act.

Where in a claim presented to the board of audit by an overseer of the poor there was included a portion of a claim presented and rejected the previous year, and the audit was for less than the whole amount, but for more than the amount of the claim, deducting the amount so improperly included,— *Held,* that a judgment vacating the whole audit was proper, as it could not be ascertained what amount of the illegal claim was allowed, or whether the deduction was made therefrom, or from the items which the board had jurisdiction to audit.

Also *held,* that assignees of the overseer stood in the same position with and were bound by the result reached in respect to him.

Also *held,* that orders drawn at the request of the overseer by the board of audit upon the supervisors, and accepted by them, created no liability against the town or any of its officers ; that at most they operated only as assignments *pro tanto* of any moneys he was entitled to receive upon the audit.

(Argued October 10, 1884 ; decided March 3, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 2, 1882, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 27 Hun, 167).

The nature of the action and the material facts are stated in the opinion.

*F. L. Westbrook* for appellants. Whether the acts of subordinate public tribunals or officers, assessors, etc., are invalid, irregular or void, depends entirely on purely legal principles cognizable by courts of law only. No equitable principles can be involved, and courts of equity have never exercised jurisdiction in such cases. (*Mooers* v. *Smedley*, 6 Johns. Ch. 28; *Kilbourne* v. *St. John*, 59 N. Y. 21, 26; *Guest* v. *City of Brooklyn*, 69 id. 506; *Hyatt* v. *Bates*, 40 id. 166; *Whitney* v. *Mayor, etc.*, 1 Paige, 548; *Livingston* v. *Hallenbeck*, 4 Barb. 16; *Phelps* v. *City of Watertown*, 61 id. 121; *Mayor, etc.*, v. *Merserole*, 26 Wend. 139; *Woodruff* v. *Fisher*, 17 Barb. 234; *Magee* v. *Cutler*, 43 id. 246; *Heywood* v. *City of Buffalo*, 14 N. Y. 538; *Bouton* v. *Brooklyn*, 7 How. Pr. 208; *Hyatt* v. *Bates*, 40 N. Y. 167; 3 Edm. R. S. 302, 303; Laws of 1840, chap. 305; 2 Edm. R. S. 302; *People* v. *Supervisors*, 1 Hill, 195; *Morris* v. *People*, 3 Denio, 395; *People* v. *Stout*, 23 Barb. 338, 344; *People* v. *Railroad Co.*, 57 N. Y. 174; *Doolittle* v. *Supervisors*, 18 id. 155; *Roosevelt* v. *Draper*, 23 id. 318; *People* v. *Ingersoll*, 58 id. 31; *People, ex rel. Corwin*, v. *Walter*, 68 id. 403; *Guest* v. *Brooklyn*, 69 id. 517.) It is a rule in equity that an injunction will not issue or lie, if there is a remedy at law (except in two or three special instances of which this is not one) and the fact that there is no such remedy in law should be stated in the complaint. (*Woodman* v. *Saltonstall*, 7 Cush. 183; *Heywood* v. *City of Buffalo*, 14 N. Y. 541.) Plaintiff had a remedy by *mandamus* to compel the board of auditors to strike out and disallow any illegal items. (*People* v. *Supervisors*, 11 Hun, 306; *S. C.*, 73 N. Y. 173.) If the money levied and collected is paid to the banks and Madden and they have no legal right to it, it may be re-

covered from them in an action brought for that purpose. (*People* v. *Fields*, 58 N. Y. 491; *Wood* v. *Mayor, etc.*, 73 id. 558; 2 Wait's Pr. 7, 8.) The doctrine of estoppel applies to a corporation as well as to an individual. (*Curnen* v. *Mayor, etc.*, 79 N. Y. 511; *Brown* v. *Mayor, etc.*, 66 id. 385.) Town auditors have power to audit and allow all charges and claims payable by their town, and they are to decide what claims are so payable, and their authority or power to allow such claims depends upon whether the town has had the benefit of them and ought to pay them, and not entirely upon the manner they are made out or presented. (*Moore* v. *Mayor, etc.*, 73 N. Y. 238; *Curnen* v. *Mayor, etc.*, 79 id. 511; *Moore* v. *Bank*, 55 id. 45; *Lee* v. *Village of Sandy Hill*, 40 id. 452; *Lynde* v. *The County*, 16 Wall. 13; *People, ex rel. Bank*, v. *Fitzgerald*, 54 How. 1; *Gould* v. *Town of Oneonta*, 71 N. Y. 308; *McNeil* v. *Bank*, 46 id. 325.) The money having been collected, and in pursuance of the statute having been paid to the supervisor for the express purpose of paying it to the parties holding the certificates, he must pay it to them. If he refuses, a *mandamus* will lie to compel him to do it, or an action will lie to recover the money in his hands, and he, in such proceeding, cannot set up that the tax was invalid, or dispute the right of the claimant to it, but if this judgment stands, he may be compelled to pay it twice. (*People, ex rel. Martin*, v. *Brown*, 55 N. Y. 186; *Bank* v. *Wheeler*, 72 id. 204.) The board of audit have exclusive authority to act, and, having acted, their decision is final. (*Schanck* v. *Mayor, etc.*, 69 N. Y. 444.) As it is undisputed that the town received the benefit of the goods purchased and furnished by Rigney for the support of its poor, which support the town was bound to furnish, it must pay, and, if it must pay, it follows that the board of auditors should allow the claim. (*Nelson* v. *Mayor, etc.*, 63 N. Y. 535; *Lanigan* v. *Mayor, etc.*, 70 id. 454.) The town being liable to pay, it made no difference to it or its tax payers whether the money was paid directly to the overseer· by the collector or to the supervisor, and by him to the overseer. (*Boots* v. *Washburn*, 79 N. Y. 213; *Martin*

v. *Supervisors of Greene,* 29 id. 645 ; *Vanderbilt* v. *Schreyer,* 81 id. 648 ; *People, ex rel. Hotchkiss,* v. *Supervisors,* 65 id. 222 ; *People* v. *Stephens,* 71 id. 527, 549.) If under any circumstances the board of auditors had the right to re-examine and reaudit accounts presented and passed upon by them at a previous session, it is to be presumed when they have exercised such right that they did it in a case in which they were authorized to do it. (*Hartwell* v. *Root,* 19 Johns. 345 ; *Bolton* v. *Brewster,* 32 Barb. 394; *Potter* v. *Merchants' Bank,* 28 N. Y. 592 ; *Leland* v. *Cameron,* 31· id. 122.) If a tax payer is dissatisfied with the auditing of a constable's bill, he has a remedy by appeal to the board of supervisors of the county. (Laws of 1866, chap. 832, § 2.) If a bill is not properly made out in items to suit the auditors, or if, from any other reason, they require further evidence, and it is laid over till a subsequent meeting, it can be allowed if the omissions are then supplied. (Laws of 1847, chap. 490 ; 1 R. S. [6th ed.] 845.) To audit an account is to thoroughly examine it, compare it with the vouchers and accurately adjust it, and " if it is for any matter the price of which is fixed by law, by custom, by authority or by contract, the board have no discretion." It must settle or declare the amount according to such law, custom, authority or contract. (*People, ex rel. Supervisors,* v. *St. Lawrence,* 30 How. 181 ; *People, ex rel. Supervisors,* v. *Otsego,* 51 N. Y. 407.) There is no pretense that this was done, and, therefore, there was no legal audit. (*People* v. *Auditors of Elmira,* 82 N. Y. 80.)

*Alton B. Parker* for the Kingston National Bank, appellant. The board of town auditors had jurisdiction and authority to audit all claims properly chargeable against the town. (Laws of 1840, chap. 305 ; 1 R. S. 358, § 2.) The act or decision of a board of town auditors or a board of supervisors in allowing claims properly chargeable against their respective town or county is final, and cannot be reviewed by the courts unless in case of fraud. (*People* v. *Stocking,* 50 Barb. 573 ; *Chase* v. *Saratoga,* 33 id. 603; *People* v. *Cortland,* 58 id. 145 ; *People,*

*ex rel. Outwater,* v. *Green,* 56 N. Y. 466 ; *Huff* v. *Knapp,* 5 id. 67 ; *Brady* v. *Supervisors of N. Y.,* 10 id. 260 ; *Brennan* v. *Mayor, etc.,* 8 Daly, 426 ; *Martin* v. *Sup'rs of Greene,* 52 N. Y. 224 ; *Supervisors* v. *Ellis,* 37 id. 626 ; *Lanigan* v. *Mayor, etc.,* 70 id. 454.) The learned court at General Term erred in holding that the bill in question having once been rejected, " the disallowance is in the nature of a judgment and can no more be reopened and decided some other way than a judgment can," and that, therefore, the audit was without jurisdiction. (*People, ex rel. Hotchkiss,* v. *Supervisors,* 65 N.Y. 222.) It was error to refuse to grant the motion to dismiss the complaint, as it is a rule in equity that an injunction will not issue if there is an adequate remedy at law, and the fact that there is no such remedy should be stated in the complaint. (*People* v. *Supervisors,* 11 Hun, 306 ; *People* v. *Fields,* 58 N. Y. 491.)

*M. Schoonmaker* for respondent. The action, as brought under chapter 161 of the Laws of 1872, is the proper remedy. *Newton* v. *Keech,* 9 Hun, 355 ; *Ayers* v. *Lawrence,* 59 N. Y. 192 ; *People* v. *Com'rs Taxes N. Y.,* 43 Barb. 444.) The grievance complained of comes within the purview of the statute. (*Ayers* v. *Lawrence,* 59 N.Y. 192 ; *Latham* v. *Richards,* 15 Hun, 129 ; *Metzger* v. *Attica & A. R. R. Co.,* 79 N.Y. 171.) It is not in the power of the board of town auditors to review the action of their predecessors and allow accounts and items rejected by them. Their action in the audit and allowance of accounts is judicial in its nature and final so far as the authority of their successors is concerned. (1 R. S. 366, 367, § 4, sub. 3 [Edm. ed. 330] ; Thompson's Supervisors' Manual, '67, ch. 5 ; *Lange* v. *Benedict,* 73 N. Y. 12, 32, 33 ; *People* v. *Stocking,* 50 Barb. 573, 579 ; *People* v. *Schenectady,* 35 id. 408 ; *Sterns* v. *Sternes,* 32 Vt. 678, 683 ; *Smith* v. *Lewis,* 3 Johns. 157 ; *Goix* v. *Low,* 1 Johns. Cas. 341.) The only possible effect of the warrant or certificate, after the indorsement by the payee, is to operate as a mere transfer or assignment of the claim, leaving the holder in the situation of all purchasers of a chose in action as having taken it subject to all equities and

legal defenses existing at the time of the assignment. (*Crane* v. *Turner*, 67 N. Y. 437; *Dann* v. *Austin*, 1 Ves. 247; *Shaffer* v. *Riley*, 50 N. Y. 61; *Bush* v. *Lathrop*, 22 id. 535; *Bullard* v. *Burgett*, 40 id. 314.) In auditing Rigney's bill, the board of town auditors, in 1878, entirely disregarded the requirements of the law in reference to the production of books and vouchers, and comparison of accounts and charges with them. (Livingston Poor Law, chap. 334, Laws of 1845, § 4.)

ANDREWS, J. This action was brought by the plaintiff in his capacity as tax payer of the town of Kingston, to vacate the audit of certain bills audited in favor of the defendant Rigney, by the board of audit of the town at their annual meeting in November, 1878, on the ground that such audits were illegal and without authority. The action was commenced after the schedule of audited accounts had been delivered by the board of audit to the supervisor, but before any action had been taken by the board of supervisors for levying upon the town the amounts embraced in the schedule. The supervisor of the town, and the board of supervisors of the county, were joined with Rigney as defendants, as were also certain persons claiming as assignees of Rigney, and in addition to the relief for the vacation of the audits, an injunction was prayed, restraining the board of supervisors from proceeding to levy a tax upon the town of Kingston for the payment of the claim of Rigney, and the supervisor of the town from paying the same. The temporary injunction granted in the first instance was modified by allowing the board of supervisors to levy a tax upon the town of Kingston for the payment of Rigney's claim, in connection with the other town charges, and the amount thereof has been collected and paid over to the supervisor of the town.

The point is strongly urged that admitting the facts stated in the complaint, and that the board of audit in auditing the Rigney claim acted illegally and without jurisdiction, nevertheless the plaintiff having no other interest than one in common with all other tax-payers of the town, cannot in his character

of tax payer maintain an equitable action to revise or annul the action of the board of audit in auditing the claim, or to restrain its collection and payment. If this contention is well founded, it disposes of the case without examination of the merits.

It was the settled law prior to the enactment of chapter 161 of the Laws of 1872, that the review and correction of errors, mistakes, or abuses, in the exercise of the powers of inferior and subordinate jurisdictions, and the official acts of public officers, in the absence of fraud or corruption, was exclusively of legal cognizance, of which courts of equity had no jurisdiction.

This doctrine was declared by the chancellor in the early case of *Mooers* v. *Smedley* (6 Johns. Ch. 27), which was an action by a tax-payer to enjoin the collection of an alleged illegal tax, and the relief was denied, the chancellor saying : " I cannot find, by any statute, or precedent, or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors, in their examination and allowance of accounts as chargeable against their county, or any of its towns, and in causing the moneys so allowed to be raised and levied." The principle of this decision has been steadily maintained and applied by the courts, and it has been repeatedly held that a tax payer in his character as such, whose position was not different from that of the whole body of tax payers, had no such interest as entitled him to resort to a court of equity, to revise, restrain, or set aside the action of town or municipal authorities, upon an allegation that their acts were unauthorized and illegal, or that unless arrested they would subject the plaintiff to unjust or illegal taxation. (*Doolittle* v. *Supervisors, etc.*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 id. 318; *Kilbourne* v. *St. John*, 59 id. 21; *Guest* v. *City of Brooklyn*, 69 id. 506.) The relegation of the tax payer, under this doctrine, exclusively to legal remedies for relief, amounted in many cases to its practical denial. The case before us is an illustration. The powers exercised by boards of audit are judicial in their nature. (*Vedder* v. *Superintendents*, 5 Den. 564.) A *certiorari* therefore lies, to

review their action, and as it concerns the public interests, any citizen who may be affected by their proceedings, may, we suppose, be relator. (See *People* v. *Collins*, 19 Wend. 56.) But not only is the issuing of the writ discretionary, but to be effectual, it must be prosecuted while the board of audit has jurisdiction of the proceedings. Its jurisdiction of accounts presented for audit, terminates with the delivery to the supervisor of the schedule of audited accounts, and after that has been done, a *certiorari* directed to the board would be fruitless. Nor would the writ lie to the board of supervisors, for the reason that that board exercises no judicial function in levying a tax for town charges, but under the statute performs a purely ministerial duty. (*People* v. *Supervisors, etc.*, 1 Hill, 195.) The remedy by *certiorari* therefore must be taken, if at all, before the delivery of the certificate of audited accounts to the supervisor, and it is not till after this has been done that the public can be supposed to know what accounts have been presented to, or audited by the board. The same considerations apply to the remedy by *mandamus*. The wrong cannot usually be known until it is too late to apply the remedy. (1 Hill, 195, *supra; People, ex rel. Lawrence,* v. *Board of Supervisors, etc.,* 73 N. Y. 173.) The remedy of a tax payer to recover back money collected on an illegal audit, is dilatory and uncertain. The collector having a warrant, regular on its face, is protected. The board of supervisors in issuing the warrant, performs a mere mandatory duty (see *People* v. *Supervisors, etc.,* 11 N. Y. 563), and if the auditors could be made liable, or the money be recovered from the person who had received it, it is a remedy which follows the consummation of the wrong. The town would not, under the doctrine of *Lorillard* v. *Town of Monroe* (11 N. Y. 392), be liable to refund the tax, nor, as held by DENIO, J., in his opinion in *Town of Guilford* v. *Supervisors, etc.* (13 N. Y. 143, 147), could the town as the representative of the tax payers, maintain an equitable action to restrain its collection.

But the plaintiff relies for his right to maintain the action upon the law of 1872, to which we have referred, and we are

of opinion that an action to vacate the audit of an illegal claim, which a board of audit had no authority or jurisdiction to audit, or when the audit was fraudulent or collusive, and to restrain the collection of a tax therefor, may be maintained by a tax payer under the act.    The act first came under the consideration of the court in *Ayers* v. *Lawrence* (59 N. Y. 192), which was an equitable action brought by certain tax payers of a town, to restrain commissioners appointed under The Town Bonding Act of 1869, from issuing the bonds of the town, on the ground that the proceedings under which they were acting were void.    The act was again considered in *Metzger* v. *Attica, etc., R. R. Co.* (79 N. Y. 171), which was a similar action by tax payers to restrain the defendant from negotiating town bonds issued to it by commissioners, and to compel their delivery up and cancellation.    In both cases the court maintained the action, although in both, there would have been a good defense to the bonds at law.    The court in *Ayers* v. *Lawrence*, in construing the words " waste or injury to any property, funds or estate of such county, town," etc., declared that " upon a fair and reasonable interpretation, they embrace not only property and funds in possession, but the credit and the power of taxation, and every process and means by which the municipal corporation can be charged primarily, or the taxable property within its limits burdened," and in *Metzger* v. *Attica, etc., R. R. Co.* the court, in answer to the objection that the bonds being void on their face there was no ground for equitable interference, said, " this might be so, if the question turned upon the exercise of the general jurisdiction of a court of equity, but it does not." It is clear, we think, within these decisions, that the action is properly brought under the act of 1872.    The complaint avers the essential facts — the status of the plaintiff, the illegal audit, the threatened injury by which the property of the tax payers will be burdened.    The purpose, if accomplished, will be a waste and injury within the act, and the statute gives a preventative remedy.    We cannot assent to the claim that the act gives a right of action in a case like this, only where before the act an equitable action could have been brought by

the town for the same relief. The cases we have cited render it very doubtful whether the town could maintain an action of this character. Indeed the case of *Mooers* v. *Smedley* does not proceed upon any distinction between an action by a taxpayer and an action by the town, but upon the broad principle that the remedy for the void or illegal act of a subordinate jurisdiction, imposing taxation, is legal and not equitable.

But the statute of 1872 has not abrogated the rule that the acts of a board of audit, within its jurisdiction, in the absence of fraud and collusion, are final and conclusive, and cannot be questioned in a collateral proceeding. Whether the claim is a proper town or county charge, in a case where it is doubtful and rests upon disputed evidence, and what amount shall be allowed, when not fixed by statute, are questions which the statute commits to the determination of the board of audit, and however much it may err in judgment upon the facts, so long as it keeps within its jurisdiction, and acts in good faith, its audit cannot be overhauled, but is final as well as to the the tax payers as to the claimant. (*Supervisors* v. *Briggs*, 2 Denio, 26 ; *People, ex rel.* v. *Supervisors, etc.*, 45 N. Y. 196, 200.) It would be intolerable to permit a tax payer, upon a mere allegation of error in the course of the proceedings of boards of audit in matters within their jurisdiction, to compel the Supreme Court in a collateral action to re-examine claims allowed upon their merits, and to approve or reverse the proceedings upon its own view of the justice or equity of the claim. The adjudication of a board of audit proceeding regularly within its jurisdiction, establishing a claim against a town, although the allowance may be excessive, or although it may err in its conclusion upon the facts, does not constitute waste or injury to the property of the town, within the act of 1872. The board of audit is the tribunal to which the law has committed the settlement and adjustment of town charges, and the purpose for which it was created would be to a great extent defeated, if its decisions could be drawn into controversy in the courts whenever an error of judgment should be alleged. But boards of audit in allowing accounts

are limited to the powers conferred upon them by the statute; and when they transgress these limitations, their acts, like those of any other tribunal of limited jurisdiction, are void. If, for example, a board of town or county auditors should allow a claim which was plainly neither a town nor county charge, its determination would be void, for the reason that such charges only are within its jurisdiction. (*People* v. *Lawrence*, 6 Hill, 244; *Supervisors, etc.*, v. *Ellis*, 59 N. Y. 620.) The same result would follow if the account presented and allowed was one which the board, by reason of the omission of some indispensable condition, had no right to consider. For example, the statute declares that no account shall be audited by town auditors for any services and disbursements unless made out in items and verified by the claimant. (Laws of 1847, chap. 490.) The statute regulating the manner of auditing accounts of overseers of the poor, prescribes that no credit shall be allowed for moneys paid, unless it shall appear that such payment was made pursuant to a legal order of a justice of the peace. (1 R. S. 627, § 52.) The object of these provisions is the protection of tax payers against false and fraudulent claims, and are clearly mandatory upon the board. A plain disregard by a board of audit of these provisions would render its action a nullity, and a charge so created would, we think, constitute waste and injury within the act of 1872.

The claim of Rigney, the audit of which is assailed in this action, was presented to the board of audit in November, 1878, and was for services and disbursements as overseer of the poor of the town of Kingston, to which office he had been elected in March, 1877. His account presented in 1878 amounted in the aggregate to $4,325.75, and included this item: "Old bill of 1877, $1,100." The board audited the account at the gross sum of $3,725.75. It does not appear what items were disallowed, or on what particular ground the disallowance of $600 proceeded. Without referring to the evidence in detail, we think it establishes with reasonable certainty that in November, 1877, Rigney presented for audit to the then board of town auditors accounts as overseer of the poor, amounting in the aggregate

to $3,174.09, which were allowed at $2,084.95, which sum he subsequently received, and that the item of $1,100 for the "old bill of 1877," included in his account in 1878, represented the portion of the account of 1877, which, had been disallowed by the board of that year.   In substance, Rigney presented to the board of 1878, for reaudit, an account, part of which had been rejected by a prior board, and the board of 1878 readjudged and allowed in whole or in part the account which the prior board had rejected.   The question is, therefore, presented as to the power of a board of audit to audit and allow claims which have been passed upon and rejected by a prior board.

The rule which forbids the reopening of a matter once judicially determined by a competent jurisdiction, applies as well to the decisions of special and subordinate tribunals as to decisions of courts exercising general judicial powers.   (See *Van Wormer* v. *Mayor, etc.,* 15 Wend. 262; *White* v. *Coatsworth,* 6 N. Y. 137.)   The decisions of boards of audit have been considered as embraced within the principle. · (*Supervisors of Chenango* v. *Birdsall,* 4 Wend. 453; *People* v. *Supervisors, etc.,* 35 Barb. 408; *People* v. *Stocking,* 50 id. 573; *Supervisors* v. *Briggs,* 2 Denio, 26.)   There is no express power conferred on a board of town auditors to reverse the decisions of a prior board. The system of town audit contemplates an annual or semi-annual adjustment of town accounts.   The supervisors are required to cause the amounts specified in the certificate of the auditors to be levied upon the town, and they cannot reverse or review the action of the auditors.   (Laws of 1840, chap. 305, § 4.)   All the arrangements of the statute look to a summary and complete determination by the auditors in respect to claims presented ·for audit.   It would certainly occasion great inconvenience, and open the door to fraudulent practices, if an account once considered and rejected on the merits, could be presented to any subsequent board of audit for re-adjudication.   The qualification is of course to be observed that the · prior decision was upon the merits.   If a claim presented is disallowed because not presented in proper form, or because not properly

verified or accompanied with proper vouchers, or for any reason not involving a determination upon the merits, the claim has not been adjudicated, and it is open to the claimant to present it to a subsequent board.  The case of *People, ex rel. Hotchkiss,* v. *Supervisors, etc.* (65 N. Y. 222), involved the question of the power of a board of supervisors which had audited a claim for bounties for volunteers furnished by the plaintiff under a contract with the county, to revoke the audit, on discovering that the county, by the consent and connivance of the plaintiff, had been deprived of the credit which was the sole consideration of the contract.  We do not doubt that that case was well decided, but it does not touch the point now in question. Our conclusion is that the board of town auditors in 1878, had no authority to re-adjudge any part of the claim of Rigney, which had been rejected by the prior board upon the merits. It was no longer an open account or a town charge.  That it was rejected upon the merits, is found by the referee.  This finding was warranted by the facts.  Without indulging in any presumption, the circumstances under which the claim was presented, the fact that the disallowance was of a percentage upon the entire account after an examination of the items, indicate that the disallowance did not proceed upon any question of form, and the defendant Rigney, having accepted the sum at which the account was audited, is concluded from objecting to the method adopted by the board in ascertaining the amount to be allowed.

The principal remaining question relates to that part of the account audited to Rigney in 1878, not included in the account of 1877.  It is claimed that the audit as to this part of his claim was also without jurisdiction, by reason of departures from the system for the support of the poor, and for auditing accounts, prescribed by what is known as the Livingston County Act (Laws of 1845, chap. 334), adopted by the supervisors of Ulster county in 1866, pursuant to chapter 245 of the Laws of 1846.  That system was not followed in some respects in the county of Ulster, and the audit was in many respects irregular under the provisions of the act.  But we are of opinion that

the departure from its provisions did not deprive the board of audit of jurisdiction, or make the audit, if free from objection otherwise, a nullity. The act of 1845 makes the expenses for the relief and support of the poor, before their removal to the county poor-house, in all cases, a charge upon the town where they may be. By the Revised Statutes (1 R. S. 625, § 42), such expenses incurred by any town for the temporary relief of poor persons who are a county charge, is chargeable upon the county. Under the Revised Statutes (§ 54), overseers of the poor are required to present to the town meeting an estimate of the amount which will be required for the support of the poor for the ensuing year, and to supply deficiencies, and the town meeting then determines what sum shall be assessed upon the town for these purposes, and in counties where there is a poor-house, the money when collected is to be paid to the county treasurer to the credit of the town, and in other counties to the overseers. Under the act of 1845, the board of town auditors are to make a similar estimate to be laid before the board of supervisors, who are required to cause the sum so estimated to be levied and collected in the town and paid to the overseers. The board of town auditors of Kingston has at no time since the adoption of the Livingston County Act by the county of Ulster in 1866, made the estimate required by the seventh section. The method of supporting the poor has been for the overseers to procure supplies upon their own credit, and to present their accounts annually to the board of audit for allowance, and the amount audited was put into the schedule of accounts and levied by the supervisors with other town charges, with direction to the collector to pay the sums collected to the supervisor, and to the supervisor to pay the same to the overseers. It is claimed that the omission of the board of audit to make an estimate under the seventh section, and of the supervisors to raise the money in advance, required for the support of the poor, deprived the overseers of any power to provide for their relief, and that advances made by the overseers for that purpose, could not be charged against the town. It is undoubtedly true that the overseers were not bound to furnish supplies upon

their own credit, and the act contemplates that they shall be put in funds in advance. But the act also contemplates that expenditures may be made and liabilities incurred by overseers for the support of the poor, beyond the sum estimated and raised in advance for that purpose, for the estimate is to embrace not only the sum which the board of audit shall deem necessary for the support of the poor during the ensuing year, but also such sum as shall be required to "supply any deficiency in the preceding year" (§ 7): The statute provides a guard against extravagant or improper expenditure by providing that relief shall be furnished (except for medical services not exceeding five dollars) only upon an order of a justice of the peace. (1 R. S. 579, § 52; Laws of 1845, chap. 334, § 2.) The court should hesitate to give such a construction to the act of 1845, as would make the duty of the town of Kingston to support its poor, dependent upon the performance by the board of audit of its duty to make the estimate under the act. The deficiency in each year under the system actually pursued, was the whole expenditure. incurred, and this amount fairly expended pursuant to the order of a magistrate, or for medical services, constitutes we think a town charge within the jurisdiction of the board of audit.

The objections founded upon the manner of audit are not jurisdictional. The omission of Rigney to lay the overseer's book before the board (although it had been put in the possession of the chairman before the meeting) and the audit of the account by the board without a comparison of the items in the account with the items in the book, were we think irregularities merely, and did not deprive the board of power to audit the claim. The statute does not declare that the board shall not audit claims unless the book is produced and examined. The board doubtless ought to have pursued in all respects the methods pointed out by the statute, but a departure from a directory provision did not render the audit void. We think also, that there was no substantial error in including in the general schedule, the claims audited to the overseer, or in the direction in the warrant of the supervisors to pay the

amount in the first instance to the supervisor of the town, with direction to him to pay to the overseer. This was a substantial compliance with the act, and was equivalent to a direction to pay to the overseers.

The learned referee placed his decision vacating the entire audit upon the further ground that the audit does not distinguish between the legal and illegal charges, and that it cannot be ascertained what amount was allowed for the part of the claim not included in the account of 1877. This point is we think decisive against the right to sustain the audit to any extent. The board so far as we can know may have allowed the whole bill of 1877, and disallowed the $600 on the subsequent account, or it may have allowed the whole of that account with $400 of the account rejected in 1877. These are considerations which tend to discredit to some extent the account of 1878. The overseer admits that he charged a small profit on the supplies furnished, and supplies were furnished in some instances to an amount which seems to be quite extravagant. The defendants, The State National Bank and Michael J. Madden, stand in the shoes of, and must abide the result reached in respect to Rigney. The orders given by the board of audit upon the supervisors, and accepted by the latter at the request of Rigney, operated at most as an assignment by him, *pro tanto*, of any money which he might be entitled to receive upon the audit. · But they created no liability against the town, or any of its officers. (See *Chemung Canal Bank* v. *Supervisors, etc.*, 5 Den. 517.)

The judgment should be affirmed.

All concur.

Judgment affirmed.