ISAAC J. SQUIRE, RESPONDENT, *v.* SILAS S. CARTWRIGHT, AS PRESIDENT OF THE VILLAGE OF ROXBURY, AND OTHERS, APPELLANTS.

*Incorporated villages — annual tax for ordinary expenditures — special tax — water rentals — contract with water company — adoption of, by a village.*

Where the amount fixed by the trustees of an incorporated village for the estimated ordinary expenditures for the current year, in the detailed statement presented by them at the annual village meeting, provided for by chapter 291 of the Laws of 1870 ("An act for the incorporation of villages"), has been fully raised by the annual assessment and tax, it seems that the trustees have no authority to subsequently levy a special tax for other items of ordinary expenditures, unless such items come within the provisions of chapter 504 of the Laws of 1887 ("An act conferring additional powers upon villages").

By force of section 5 of chapter 737 of the Laws of 1873 ("An act in relation to the creation and formation of water-works companies in towns and villages of the State"), as amended by chapter 422 of the Laws of 1885, the entire annual rental to be paid by an incorporated village to a water company, under a contract made under that act, must be included in the annual village tax, and no authority is given to the trustees to divide such rental and raise a part in a special tax.

The fact that some of the items, in a special village tax, levied as one tax, are improperly included therein, renders the whole tax invalid.

*Quære*, whether chapter 504 of the Laws of 1887 ("An act conferring additional power upon villages") was intended to include the case of raising money to pay the rental of hydrants to a water company, under an executory contract made by the village trustees, not authorized by the act of 1873, and for which there was no temporary emergency.

The electors of a village cannot, by a confirmatory resolution at a special election, ratify and validate the insertion, in a special tax previously levied by the village trustees, of items required by statute to be raised, if at all, by the annual tax.

The consent to an executory contract made by village trustees with a water company for the erection and supply of hydrants, had been refused at a special village election:

*Held*, that this did not prevent such contract being adopted at a subsequent special election, and being operative and valid from the date of such adoption, the hydrants provided for by the contract having been in the meantime erected and used, and the provisions of the act of 1873, as to the approval by the electors, having been substantially complied with.

APPEAL by the defendants, Silas S. Cartwright, as president, and others, from a judgment, entered in the Delaware county clerk's office on 6th of August, 1892, upon a decision rendered at the Delaware County Special Term.

By the judgment, the defendants are forever enjoined and restrained from enforcing the tax warrant issued by the defendants, the president and trustees of the village of Roxbury, on or about the 11th of October, 1890, and from collecting the tax thereby sought to be collected, and from applying any of the moneys collected upon such tax warrant for the purposes specified in the resolution under which the tax was levied.

The plaintiff is a taxpayer of the village of Roxbury, the president and trustees of the village and the collector are defendants and also the Roxbury Village Water Company. The action is brought under the provisions of chapter 673 of the Laws of 1887.

The resolution, in pursuance of which the tax warrant in question was issued, was passed at an adjourned meeting of the board of trustees held on October 11, 1890, and is as follows:

"*Resolved*, That a tax be levied on the taxable property of the incorporated village of Roxbury, New York, for the sum of six hundred and twenty-one and fifty-four one hundredths dollars ($621$\frac{54}{100}$), of which $300 is to pay for 500 feet of fire hose; $200 of which is to pay for the first six months water rent, and the balance, $121$\frac{54}{100}$, is to pay for lighting streets and other necessary expenses."

The warrant was soon thereafter delivered to the defendant, the collector of the village, and this action was commenced on or about November 13, 1890.

The annual meeting of the village for the year 1890 was held on the eighteenth day of March. Thereafter, and on June 7, 1890, the defendants, the president and trustees of the village, caused to be made the annual tax levy in and upon the taxable property and inhabitants of the village for the year 1890, for the sum of $525, which was the full amount proposed to be raised and stated in the detailed statement presented to the annual meeting as required by law. None of the items in the resolution of October eleventh were in this statement. On the 13th of May, 1890, the president and trustees, in behalf of the village, entered into a contract with the Roxbury Village Water Company, by which the village leased from the water company, for the term of five years, the use of ten hydrants for fire purposes only, at an annual rental of $250, payable in semi-annual payments, the hydrants to be put in the streets at such places as the trustees may direct, wherever the water pipes are

laid; the five years to begin and date from the day the hydrants are ready for use, and the rent to commence and accrue from that date. The company, among other things, agreed that the hydrants should be ready for use within one year from the date of the contract.

On the 28th of July, 1890, the trustees called a special election of the electors of the village for August 9, 1890, to vote upon a resolution passed by the board of trustees authorizing a contract with the water company for ten additional hydrants, at an annual rental of fifteen dollars each. This election was held, and the resolution defeated.

On the 15th of August, 1890, the board of trustees unanimously passed a resolution to make a contract with the water company for the rental of eleven additional hydrants for the term of three years, ten of them at an annual rental of fifteen dollars each, and the other free for the first year, and the next two years at the rate of twenty dollars a year, the rental to begin when the hydrants were ready for use. This resolution is, by its terms, "pursuant to the provisions of an act passed by the legislature of New York June 2, 1887." A contract was accordingly made with the water company, dated August 15, 1890, and by it the rental is made payable semi-annually in advance.

The item of $200, for rent, in the resolution of October 11, 1890, is the rental, under these contracts, for the first six months. The hydrants were ready for use on November 1, 1890, and they were accepted by the trustees, and have since been in use by the village.

It does not appear when the hose referred to in the resolution of October eleventh was purchased, but it is found that it, and also the additional hydrants, were necessary for the proper protection of the village from fires.

After this suit was commenced, and on the 14th of September, 1891, in pursuance of notice given by the board of trustees, a special election was held, at which a resolution was passed approving and confirming the act of the board in making the contract of August 15, 1890, and authorizing the trustee to carry out the same and levy in one sum, and collect all necessary tax that may be required, from time to time, to fully meet the requirements of that contract; also, a resolution affirming and approving the act of the board in issuing

the warrant of October 11, 1890, and in assessing and levying the amount therein named, and, in the event that the warrant should not be enforced and the full amount thereof collected, authorizing the trustees to levy in one sum, and collect the whole or any part thereof by relevy. The fact of the passage of these resolutions was set up by supplemental answer.

*Wagner & Fisher*, for the appellants.

*C. L. Andrus*, for the respondent.

MERWIN, J. :

The questions in this case are (1), whether the board of trustees had any authority to levy the tax in question at the time it was levied, and if not, then (2), whether the tax has been made valid by any ratification so as to affect the rights of the plaintiff.

Of the items making up the amount of the tax, the sum of $300 for hose, and the sum of $121.54 for lighting streets and other necessary expenses, were within the class of ordinary expenditures as defined by the statute applicable to the village. (Chap. 291 of the Laws of 1870, tit. 4, § 2.) The annual meeting of the village was on March 18, 1890, and those items were not in the statement furnished by the trustees to that meeting. The statute (§ 11, tit. 3 of the act above referred to) required that statement to contain " the estimated ordinary expenditures of such village for the ensuing year, to meet which taxes may be lawfully raised." In the assessment which the trustees were required to make within sixty days after the annual meeting (tit. 6, § 1, as amended by chap. 246 of the Laws of 1889) they could include " such sum as they deem necessary, besides funds received and estimated to be received from other sources, to defray the ordinary expenditures of the village for the current year not to exceed the amount fixed for that purpose in the detailed statement of the trustees present at the annual meeting." The amount which the trustees did fix in their statement was fully raised in the annual assessment and tax thereafter levied. We are shown no authority for the trustees subsequently levying a special tax for other items of ordinary expenditures, unless the case is brought within the provisions of chapter 504 of the Laws of 1887, and that is not claimed with reference to these items.

Very evidently the intent of the statute of 1870 was to limit the ordinary expenses for the current year to the amounts fixed by the trustees in their report to the village and to require all that was raised for that purpose to be raised in the annual tax.

Of the item of $200 for water rents, the sum of $125 was for six months' water rent under the contract of May 13, 1890. It is conceded that this contract is valid under the provisions of section 5 of chapter 737 of the Laws of 1873, as amended by chapter 422 of 1885. It did not run for more than five years, and the amount to be paid did not exceed the sum of two and one-half mills for every dollar of taxable property per annum. The taxable property was $103,590, and the annual rental was $250. That statute, however, provides that "the amount of such contract agreed to be paid shall be annually raised as a part of the expenses of such village, and shall be levied, assessed and collected in the same manner as other expenses of such village are raised." Very evidently the intention was to include the entire annual rental in the annual tax, and there was no authority to the trustees to divide it and raise a part in a special tax.

The balance of the $200 item was six months' rent under the contract of August 15, 1890, and its consideration involves the validity of that contract. The defendants seek to justify it under the provisions of chapter 504 of the Laws of 1887. That act provides that, whenever it shall be desired by any village to raise moneys additional to the amount permitted to be raised by its charter or by the general law for the purpose of building a bridge, constructing a sewer, or carrying out some other proper village object, the trustees may call a special election and submit the question of raising such moneys, and if there is a majority vote in favor of the matter, the trustees are authorized to raise the same "in the same manner as other village taxes are raised and collected," and the trustees, in anticipation of the tax, may temporarily borrow the amount and use it for the purpose desired. If, however, "the amount desired to be raised for any of the purposes aforesaid shall not exceed in the aggregate the sum of five hundred dollars," the trustees, by an unanimous vote, could proceed and raise the amount without submitting the question to the electors. By the second section of the act it is provided that the powers conferred by the act are "in addition and

supplementary to and independent of all other powers possessed by villages, either under any special act or under the general act for the incorporation of villages."

It is somewhat doubtful whether this act was intended to include a case like the present. There was here no temporary emergency. The moneys were only desired to be raised in order to perform the contract so that the question of the validity of the contract would need to be determined before reaching the benefit of the act. Concededly, the contract was not authorized by the act of 1873 above referred to, which regulates the manner in which such contracts should be made. Besides the object sought to be accomplished was the obtaining of the use of the necessary hydrants for the protection of the village, and this included the hydrants of the first contract. It was all executory; none had yet been furnished by the Water Company. The purpose was substantially a single one and in order to ascertain whether the amount exceeded " in the aggregate " the sum of $500, and was, therefore, beyond the power of the trustees, it may, with considerable force, be said that the amount of the first contract should be included. If so, the trustees could not act without submitting the question to the electors. Be this as it may, the fact that the other items were improperly included in the special tax would make the tax invalid. It was but one tax. (See Welty on Assessments, § 232; *Smith* v. *Cramer*, 14 Week. Dig., 107; *Hassan* v. *City of Rochester*, 67 N. Y., 529.)

The effect of the confirmatory resolutions of September 14, 1891, remains to be considered. One of these assumed to confirm, as an entirety, the tax and warrant of October 11, 1890. Still the electors could not, by way of ratification, do any more than they could have done at the time, and they, in October, 1890, had no right to say that certain items of expenditure might be raised by special tax in violation of the provisions of the statute, which required them to be raised, if at all, by the annual tax and after certain formalities. The language of Judge DENIO, in *Peterson* v. *Mayor, etc.* (17 N. Y., 449), is applicable. At page 454 he says: " No sort of ratification can make good an act without the scope of the corporate authority. So where the charter or a statute, binding upon the corporation, has committed a class of acts to particular officers or agents, other than the general governing body, or where it has prescribed certain

formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects."

Whether the electors could adopt the contract of August 15, 1890, is another question. They had refused to authorize it at the election August 9, 1890. After that the hydrants were put in and were ready for use on November first following, and from that time forward to the election in September, 1891, were used by the village and presumptively their necessity was demonstrated. That being the situation, the fact of the refusal in August, 1890, should not prevent the electors from again acting upon the subject in September, 1891. In this view I think that the adoption in September, 1891, should be deemed operative, and that the contract should be treated in force and valid from that time. The statute of 1873, as to the approval by the electors, was substantially complied with. This, however, would not interfere with the rights of the plaintiff. The act of 1873 provided that the amount payable under such a contract should be annually raised as other expenses of the village.

It follows that the Special Term was correct in restraining the collection of the special tax in question. It is, however, suggested by the appellants that the findings and judgment are sufficiently broad to prevent any future enforcement of the contract of August 15, 1890, as adopted in September, 1891. It is not clear that this is so, but to avoid any question upon the subject the judgment should be modified so as to be without prejudice to any proceeding taken as authorized by law to enforce that contract based upon the adoption referred to, and, as modified, affirmed, with costs.

HARDIN, P. J. and MARTIN, J., concurred.

Judgment modified as stated in the opinion, and, as modified, affirmed, with costs.