ISAAC J. SQUIRE, Appellant, *v.* OTIS M. PRESTON, as President of the Village of Roxbury, N. Y., and Others, Respondents.

*Taxpayer's action — relief therein — right of village officers to employ an attorney — effect of a vote to introduce a water system — not retroactive — extraordinary emergencies.*

A taxpayer of a village has a standing in court which enables him to bring an action under the provisions of chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887, to restrain the collection of an annual tax levy, and even if he does not make out a case sufficient to authorize the setting aside of the tax warrant, but only shows that the officers of the village are threatening to pay illegal claims from the funds that they are raising or from the funds of the village, he is nevertheless entitled to some relief, and if any of the items contained in such levy and attacked by the plaintiff in such action are not valid claims against the village, it is improper to dismiss the complaint in such action.

The president and trustees of a village have power under section 3 of title 3 of chapter 291 of the Laws of 1870, to employ an attorney or attorneys to defend an action brought against them in their official capacity.

Under chapter 737 of the Laws of 1873 the favorable votes of the electors of a village is a condition precedent to the making of a contract with a corporation organized under the Water Act for the delivery of water by it to the village for public purposes. Such vote does not present a question of ratification or waiver, and a vote authorizing a contract cannot relate back to and validate a contract as of a prior time at which it was made, and the most that it can legally do would be to make the contract operate from and after the favorable vote of the electors of the village upon the subject.

Chapter 504 of the Laws of 1887 is designed to meet emergencies not otherwise provided for in the administration of the affairs of villages, when for some public purpose there is a necessity for the immediate use of money. The provisions of such act are to be construed in view of its object, and there is no design to modify by such provision chapter 737 of the Laws of 1873, nor can

the general provisions of the former act be construed to apply to the subject of such latter act which refers to a particular and a specified subject. The general provisions of chapter 504 of the Laws of 1887 will not be deemed to change the provisions of chapter 737 of the Laws of 1873 unless an intent to do so is clearly manifest.

APPEAL by the plaintiff, Isaac J. Squire, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Delaware on the 9th day of March, 1894, upon the decision of the court, rendered at the Delaware Special Term, vacating and setting aside a temporary injunction and dismissing the plaintiff's complaint, with notice of an intention to bring up for review on such appeal the findings and decision of the court, the exceptions thereto and all the questions of law raised by the findings, exceptions and the issues in the case.

*C. L. Andrus,* for the appellant.

*Edwin D. Wagner,* for the respondents.

MERWIN, J.:

This case presents another phase of a litigation that was before this court in *Squire* v. *Cartwright* (67 Hun, 218). That was an action to restrain the collection of a special tax levied in October, 1890, which, among other things, contained an item for rent of water hydrants under a contract made by the president and trustees of the village with the water company on August 15, 1890. It was decided by the trial court in that case that the contract of August 15, 1890, was inoperative and void, and judgment was given restraining the collecting of the tax and restraining the defendants and their successors in office from applying any of the moneys collected under the warrant to the payment, among other items, of the water rent referred to. On the appeal the judgment was modified so as to be without prejudice to any proceeding taken as authorized by law to enforce the contract of August 15, 1890, based on its adoption at a village meeting held on the 14th day of September, 1891, and as modified the judgment was affirmed. In the judgment entered on the decision on the appeal a clause is inserted as follows: "It being hereby adjudged that the said contract is a valid and legal contract from and after the adoption thereof by said village meeting."

The present action was commenced on May 18, 1891, to restrain the collection of the annual tax levy, which was levied on May 2, 1891, and which contained, among other items, water rent accruing prior to September 14, 1891, on the contract of August 15, 1890, and an item of $150 for counsel fees incurred by the president and trustees in the prior action. The proceedings of the meeting of September 14, 1891, were pleaded and proved as they were in the former action. Upon the trial it was held that the contract of August 15, 1890, was valid under the provisions of chapter 504 of the Laws of 1887, and was also made valid as of its date by the proceedings of ratification or adoption by the meeting of September 14, 1891; that the item for counsel fees was a proper charge against the village, was reasonable in amount and properly included in the tax levy; that the plaintiff had an adequate remedy at law, and the annual tax levy should not be interfered with.

This action is brought by the plaintiff, a taxpayer, under the provisions of chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887. (Code Civ. Proc. § 1925.) There seems to be no doubt about his having a standing in court. (See *Ayers* v. *Lawrence,* 59 N. Y. 192; *Osterhoudt* v. *Rigney,* 98 id. 231; *Warrin* v. *Baldwin,* 105 id. 534.) And if the plaintiff did not make a case for setting aside the tax warrant, and still showed that the officers of the village were threatening to pay illegal claims from the funds that they were raising, or from funds of the village, the plaintiff would be entitled to some relief. The complaint and the statute are broad enough to reach that phase of the case. So that if either of the items which the plaintiff attacks is not a valid claim against the village the complaint was improperly dismissed.

The former action was against the president and trustees officially, and if, in its defense, they acted in good faith they should be protected for their reasonable counsel fees. Under the general act power is given "to employ an attorney or attorneys for the transaction of any matter requiring legal skill." (Chap. 291, Laws of 1870, tit. 3, § 3, subd. 5.) It is not found or shown that they acted in bad faith. The trial court did not, I think, err as to this item.

The validity of the other item objected to depends on whether the contract of August 15, 1890, was operative prior to September 14, 1891. By the judgment on the appeal in the former case it is

adjudged that it was operative from September 14, 1891, and inferentially it was decided that it was not operative before.

The statute under which the board of trustees derived their power to make any contract on the subject was chapter 737 of the Laws of 1873, entitled "An act in relation to the creation and formation of water works companies in towns and villages of the State of New York." By section 5 of this act, as amended by chapter 422 of the Laws of 1885, the board of trustees of any incorporated village was given power to make a contract with a corporation organized under the Water Act for the delivery by said company of water through hydrants or otherwise for public purposes, provided, however, "that no such contract shall be made for a longer period than five years, nor for a sum exceeding in the aggregate two and one-half mills for every dollar of the taxable property of said village per annum, unless the proposition for the same be submitted to a vote of the electors of such village * * * and approved by a majority of the voters entitled to vote and voting on such question at any annual election, or at a special election duly called; and any board of trustees, when so authorized, may contract for a term not exceeding thirty years; the amount of such contract to be paid in semi-annual installments." The trustees, on May 13, 1890, made a contract on the subject which practically exhausted their power to act without a vote of the electors. The validity of that contract is not disputed. Then, in reality, in continuation of the same subject, they made the contract in question after a submission of the proposition to a vote of the electors and its rejection by them. Afterwards, and after both actions had been commenced, the meeting or election of September 14, 1891, occurred, the effect of the action of which is now under consideration. Under the act of 1873 a favorable vote of the electors was a condition precedent. The proposition, not the contract, was to be submitted, and, if approved, then the trustees could make a contract. It was not a question of ratification or waiver that was to be submitted, nor was any general power given to the electors on the subject. It was simply a question whether they would say yes or no to a proposition for a future contract. It seems to me very clear that the vote of the electors under the statute on September 14, 1891, did not relate back to and validate the contract as of the

FOURTH DEPARTMENT, NOVEMBER TERM, 1894.          [Vol. 82.

time when it was originally made, but that the most that the defendants can legally claim is that it became operative from and after the favorable vote of September 14, 1891.

The other theory upon which it is claimed to be valid is that it is within the authority conferred by chapter 504 of the Laws of 1887, entitled " An act conferring additional powers upon villages." By section 1 of that act it was provided that whenever it shall be desired by any village, whether incorporated under a special act or organized under the General Act for the Incorporation of Villages, " to raise moneys additional to the amount permitted to be raised by its charter or by the general law aforesaid, for the purpose of building a bridge, constructing a sewer or carrying out some other proper village object," the trustees might submit " the question of raising such moneys " to the " taxpaying electors " at a special election, and if there was a majority vote in favor " of raising such moneys," then the trustees may raise the same in the same manner as other village taxes are raised and collected, and in the mean time in anticipation of such tax the money may be temporarily borrowed on the credit of the village and used for the purpose desired. If the amount desired to be raised for any of the purposes stated shall not exceed in the aggregate the sum of $500, the trustees may by an unanimous vote and without submitting the question to the said electors, proceed to raise it in the same manner as other taxes, and in the mean time borrow in anticipation and use for the purposes intended. By section 2 of the act it was provided that " the powers conferred by this act are in addition and supplementary to and independent of all other powers possessed by villages, either under any special act or under the general act for the incorporation of villages."

It is very apparent that this act was designed to meet emergencies not otherwise provided for when for some public purpose there was a necessity for the immediate use of moneys. The moneys to be raised were " additional to the amount permitted to be raised by its charter or by the general law aforesaid," and naturally would have reference to the subjects that by the charter or the general act the village had control over. The object was " to raise moneys," and the provisions of the act are to be construed in view of that object. The submission was to be to " the taxpaying electors," not " to the electors," as in the Water Act. Aside from borrowing the

money in anticipation of the tax, no power was given to make con-tracts to bind the village. It is difficult to see. how there was any design to modify the provisions of the Water Act, or how it can fairly be construed to refer at all or apply to the subject of that act. That was a particular and specific subject with special provisions, and the general provisions of the act of 1887 should not be deemed to change them unless an intent to do so was clearly manifest. (*Matter of Commissioners of Central Park,* 50 N. Y. 493; *In the Matter of the Evergreens,* 47 id. 220.) The intention of the Legis-lature is the test, and I fail to see how an intent can be inferred in the act of 1887 to modify the conditions of the act of 1873. It may be observed that the provisions of the act of 1873 are in substance re-enacted in the revision of 1890. (Chap. 566, § 81.)

These considerations lead to the conclusion that the defendants are not helped by the act of 1887, and that the contract of August 15, 1890, cannot be deemed to be operative prior to September 14, 1891. It follows that upon the case as made the plaintiff was entitled to some relief, and that, therefore, the complaint should not have been dismissed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed on the exceptions and a new trial ordered, costs to abide the event.

