(140 App. Div. 817.)
PEOPLE ex rel. SARATOGA LAKE BRIDGE CO. v. WALBRIDGE, County Treasurer.

(Supreme Court, Appellate Division, Third Department.   November 16, 1910).

1. BRIDGES (§ 26*)—ACQUISITION BY COUNTY.
Even if the resolution referred to by Laws 1907, c. 25, authorizing the board of supervisors of Saratoga county, by resolution, to determine to acquire the property and franchises of the Saratoga Lake Bridge Company, by condemnation or agreement, and, after the passage of such resolution, to acquire it by condemnation or purchase, was such as is contemplated by County Law (Laws 1892, c. 686) § 17, requiring resolutions to have a title and an enacting clause, the county was bound to pay the agreed price, though the resolution of determination to purchase did not comply with section 17, where it agreed to purchase the bridge and the deed therefor was delivered to and accepted by it.
[Ed. Note.—For other cases, see Bridges, Dec. Dig. § 26.*]

· 2. BRIDGES (§ 12*)—TAXES—APPORTIONMENT OF DEBT.
Laws 1899, c. 594, as amended by Laws 1907, c. 104, relates to the purchase by counties of toll bridges, etc., over unnavigable streams, and pro-

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vides that the bonds, in whole or in part, issued to acquire any toll bridge, may be apportioned by the board upon the towns, cities, and villages, constituting separate highway districts in which the bridge is located, in such proportions as the board deems just. The original act compelled the board to impose the entire cost upon the towns, but an amendment provided that in certain counties, excepted from the act, the cost should be assessed upon the entire county, and a later amendment substituted the words "shall be apportioned" and added "in whole or in part." *Held*, that provision for the payment for a toll bridge over navigable waters was not governed by the Laws of 1899, as amended, it relating to bridges over unnavigable streams; but, even if it were, the board of supervisors could levy the cost upon all the towns of the county in its discretion, though it was not bound to do so and could require it to be paid by tax upon the county at large.

[Ed. Note.—For other cases, see Bridges, Dec. Dig. § 12.*]

3. COUNTIES (§ 206*)—CLAIMS—ALLOWANCE BY SUPERVISORS—QUALIFICATION BY SUBSEQUENT BOARD.

A county board of supervisors does not have authority to qualify an audit, legally made by the preceding board, in a manner so as to injure the claimant.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322–330; Dec. Dig. § 206.*]

4. MANDAMUS (§ 108*)—EFFICACY OF REMEDY.

Mandamus to compel a county treasurer to pay an audit for a toll bridge purchased from relator will not be denied because defendant has credited back to the various towns the money which each contributed for the payment of the claim; such crediting being a mere matter of bookkeeping, leaving the money still in the treasurer's custody.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 226, 232–237; Dec. Dig. § 108.*]

Appeal from Special Term, Saratoga County.

Petition for mandamus by the People, on the relation of the Saratoga Lake Bridge Company, against John K. Walbridge, as County Treasurer. From an order denying the writ, relator appeals. Reversed, and writ granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

John L. Henning, for appellant.
Hiram C. Todd, for respondent.

HOUGHTON, J. By chapter 25 of the Laws of 1907, the Legislature authorized the board of supervisors of the county of Saratoga, by resolution, to determine to acquire the real property, rights, and franchises of the Saratoga Lake Bridge Company by condemnation or agreement with the owners, and after the passage of such resolution to acquire the same by condemnation or purchase.

At a session of the board of supervisors of that county held January 13, 1908, by an affirmative vote of all the members of the board, the following resolution was passed:

"Resolved, that the real property, rights and franchises of the Saratoga Lake · Bridge Company, if a satisfactory agreement can be made, be purchased for the purpose of making and maintaining a free bridge, at a cost not to exceed $2,000. · And be it further resolved, that the supervisors of Saratoga Springs, the supervisors of Saratoga and the chairman of this board

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be a committee to carry into effect the terms of this resolution, provided the said committee and bridge company are able to agree upon a sum for the purchase of said bridge not exceeding $2,000, as herein provided."

At a session held in December following, the committee appointed by the above resolution reported that they had examined into the matter and were of the opinion that the bridge should be a free bridge, and recommended its purchase for the sum of $4,000. The adoption of the report was moved, and it was carried by a two-thirds vote of the board.

At a session in January, 1909, the following resolution was passed by an affirmative vote of all the members:

"Whereas, the Saratoga Lake Bridge Company has accepted the offer of this board for the purchase of all its rights, title and franchises in said bridge for the sum of $4,000, and whereas, a proper deed of conveyance has been received by the chairman of this board: Therefore be it resolved, that this board accept said deed, and that the clerk of the board have the same duly recorded in the office of the clerk of the county of Saratoga."

Following this resolution the bridge company directed its toll taker to cease taking toll and formally surrendered control over the bridge. In the following December, at a regular session of the board, the bridge company presented a duly verified claim for the $4,000, with interest from the time of the surrender of possession of the bridge, as had been agreed, in all amounting to $4,241.58, which claim was referred to the committee on roads and bridges accounts, reported as due in full, with a recommendation that, instead of its being paid as a county debt, it be paid by assessing to each town its proportionate share thereof on the basis of the equalized value of said towns for the year 1909, and that the law and finance committee of the board be instructed to make such division in the county budget to be presented by them. This report was duly adopted, and the law and finance committee reported that it had apportioned the purchase price of the bridge upon all the towns of the county in the proportion directed, specifying the amount with which each town was chargeable. This report was adopted by the whole board, in accordance with its rules, as were the other reports enumerated, and the tax was levied on that basis, and the warrants placed in the hands of the various town collectors, and county script was issued directing the defendant as county treasurer, on and after February 1, 1910, to pay to the bridge company the amount so audited in its favor.

In January, 1910, after all or a large part of the money had been paid by the various collectors to the defendant as county treasurer, he sent a communication to a new board of supervisors, who had taken office the 1st of January previous, to the effect that he would be unable to pay the audit to the bridge company if presented, because he had decided the audit had not been legally made and the bridge not legally acquired for the reason that a proper resolution to acquire the bridge had not been adopted, and that, if he was mistaken in that conclusion, the audit was improper in that the claim had been levied upon the county at large; whereas, the cost of the bridge should have been imposed upon the two towns which it connected. Thereupon this new board passed another resolution to the

effect that the county of Saratoga should purchase the bridge for the sum of $4,241, and that the cost be apportioned between the two towns which the bridge connected, in a proportion specified, and authorizing such towns to issue bonds for the payment if they so de sired. By a further resolution the defendant was directed to credit the sums raised to pay the audit to the bridge company back to the various towns. The audit was thereafter formally presented to the defendant, and he refused payment, and this proceeding was taken to procure a mandamus compelling the defendant to pay the same, and from the order denying such relief the relator appeals.

We are of opinion the mandamus should have been granted. The action of the board of supervisors was in effect the passing of a resolution determining to acquire the real property, rights, and franchises of the Saratoga Lake Bridge Company. The first resolution restricted the price to $2,000; but a committee was appointed to confer with the company, and it reported that the property could not be purchased for that price, but that it could be purchased for the sum of $4,000. The board by a two-thirds vote adopted such report and resolved to accept a deed and pay that amount. The deed was delivered and accepted and a claim for the purchase price audited.

The board of supervisors acted under the authority conferred upon them by the act of 1907 and made a bargain with the owners to purchase the bridge at a certain price as that act permitted them to do. The resolution determining to acquire the bridge was not required by the act to be in any particular form. If it be assumed, however, that it was such an act or resolution as is contemplated by section 17 of the county law (Laws 1892, c. 686), requiring a title and an enacting clause and publication within six weeks after the close of the session, still, the board of supervisors in behalf of the county having made a bargain to purchase the bridge, and the deed thereof having been delivered and accepted, it was incumbent upon the county to pay the agreed price. After the county had become seised of the property, the board could not refuse to pay the purchase price, and audit of the claim therefor was not only proper but a necessity.

Nor was it improper for the board to levy the cost of the bridge upon all the towns of the county according to their equalized assessment. The board bought the bridge for the county at large, and the county, at least in the first instance, was obligated to pay the purchase price. Provision for payment was not governed by chapter 594 of the laws of 1899 as amended by chapter 104 of the Laws of 1907. That act relates to bridges over unnavigable streams, and the bridge in question was over navigable waters, which was the reason for the enactment of the law of 1907. But even if the board was governed, in paying for the bridge, by the general law, still it had the right to apportion the cost of the bridge on all the towns of the county if it saw fit. That act provides that the amount of bonds, in whole or in part, issued for the acquiring of any toll bridge or toll road, may be apportioned by the board upon the towns, cities, and villages constituting separate highway districts in which such road or bridge is located, in such proportions as the board may deem just. No bonds

were issued in the present case; but, assuming that money raised for the purchase should be apportioned in the same manner as bonds, the history of the amendment of the law of 1899 shows that the Legislature did not intend to compel a board of supervisors to impose all the cost of the bridge or toll road upon the towns in which it was situated. As the act originally read, it compelled the board to impose the entire cost upon the towns. The law was first amended excepting certain counties, and provided that in those counties the cost should be assessed upon the entire county. A later amendment substituted the words "shall be apportioned" and added the words "in whole or in part." It is manifest, therefore, that the Legislature did not intend to make it obligatory upon the board to impose the cost upon the towns in which the bridge or road was situated, but so amended the law that the board might pay the cost by tax upon the county at large, which in the present case the board determined to do.

The objections raised by the defendant, therefore, to paying over to the relator the moneys which the board of supervisors had raised by taxation and placed in his hands for that purpose, were not well founded. The new board of supervisors did not have authority to qualify the audit which the preceding board had legally made. Osterhoudt v. Rigney, 98 N. Y. 222; People ex rel. Smith v. Clarke, 174 N. Y. 259, 263, 66 N. E. 819. It is true, as was held in People ex rel. Hotchkiss v. Supervisors, 65 N. Y. 222, a board of supervisors may rescind its action in auditing an account because it has made a mistake in so doing. In such case the action on the rescission becomes the final action. One board of supervisors, however, having finally acted upon a claim, the succeeding board cannot rescind such action to the detriment of the claimant.

Nor is it any objection to the granting of a mandamus that the defendant has credited back to the various towns the money which each contributed to the payment of relator's claim. Such crediting is a mere matter of bookkeeping, and the money is still in the custody of the defendant.

The order should be reversed, with costs and disbursements, and the peremptory mandamus granted, with $25 costs. All concur.