B. SNYDER, *et al.,* v. BOARD OF EDUCATION OF CITY OF
PAOLA.

TREASURER OF BOARD OF EDUCATION; *Authority to pay Moneys.* The
treasurer of the board of education of a city is authorized to pay out
money *only* upon a warrant duly signed, etc. When therefore, he
and his bondsmen are sued by the board for failing to pay over
money in his hands to his successor in office, it is no defense to the
action, that the board was indebted to a third party on a contract
for building a school-house, that the treasurer had without the knowl-
edge or authority of the board loaned money to such contractor, and
tendered an unaccepted order from such contractor on the board for
the amount of the loan.

*Error from Miami District Court.*

ACTION by the *Board of Education of the City of Paola*
against *Snyder* as principal, and nine others as sureties, to
recover moneys alleged to belong to said *Board of Education,*
and which came to *Snyder's* hands as treasurer of said board,
and which he neglected and refused to pay over to his suc-
cessor in office. The defense interposed, and the proceedings
at the trial, are sufficiently stated in the opinion. Trial at
the September Term 1873 of the district court, J. B. S., judge
*pro tem.,* presiding. Verdict and judgment in favor of the
plaintiff for $3,519.32. *Snyder* and others bring the case
here on error.

*W. R. Wagstaff,* and *W. B. Brayman,* for plaintiffs in error.
*B. F. Simpson,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Two questions are presented by plaintiffs in
error. First, an alleged error in the modification of an
instruction; and second, that the verdict is contrary to the
evidence. Of these in their order.

The action was against an ex-treasurer of the school district
of Paola, and the sureties on his bond, for not paying over

to his successor in office the funds claimed to be in his hands. Among other defenses the treasurer tendered an order drawn by one L. E. Post on the board of education and in his favor for $2,040, and claimed that the board owed said Post at least that amount on a contract for building the school-house. Post had been the contractor for a large school-building just built for the plaintiff. Snyder, as treasurer, had loaned money of the school fund to some sub-contractors under Post, and had received this order from Post in payment of the loan. There was a conflict in the testimony as to whether this loan had been made by the treasurer on his own responsibility, or with the knowledge and approval of the board of education. The order was not accepted. Upon this, counsel asked the instruction, "If the jury find from the evidence that the plaintiff on the 7th of May 1873 owed L. E. Post the amount of said order, then it was the duty of the board to accept said order and credit his account for the amount." This was modified by the court by adding, "provided they should find said order was in payment of a loan made by authority of the board, or subsequenty ratified by said board." Ought the court to have given the instruction as offered? and was there error in the modification? We think not. At least, we see nothing of which the plaintiffs in error can complain. That no action can be maintained upon an unaccepted order, is clear. *McCubbin v. City of Atchison*, 12 Kas. 166. True, it is sometimes treated as an equitable assignment of a claim for money due, and sustained upon that ground. But it is not the duty of the board of education, or the common council of a city, or the board of commissioners of a county, to permit their respective treasurers to pay out money on their own responsibility, and to whomsoever they see fit, and then accept in lieu of said money orders drawn on them by their respective creditors. The treasurer was at liberty to "pay moneys only upon a warrant signed by the president," etc. Laws 1872, p. 223, § 111. Whatever moneys he received it was his duty to hold until such a warrant was presented; and upon settlement he must return either the money or the warrant. Any other rule would

be fraught with great danger. It would open the door to speculation on the part of treasurers, to unjust preferences of creditors, and consequent litigation. .It would tend to prevent that orderly arrangement of the financial affairs which results in regular and not excessive taxation. The treasurer is not the financial agent of the board. He is simply the custodian of the funds. The board determines its own financial matters — settles what debts shall be contracted, and when paid — what taxes shall be levied, and which .of matured obligations shall be first paid. It makes its own contracts, and settles with its contractors. To permit the mere custodian of its funds to interfere in these matters, would be to introduce inexplicable confusion. If he may advance to one creditor of the board, and compel the latter to accept an order for the debt in lieu of the money in his hands, he may to another, and so become himself the financial agent and manager of the board. How easy the way, and how strong the temptation to personal profit, if such a rule could be sustained. How many of the municipalities of this state find their obligations depreciated in value, and passing in the market for less than their face. Give the treasurers the power implied by this instruction, and how speedily would all the funds' pass out of the treasurers' hands, not as the official boards might deem best, but as the friendships or the interest of the treasurers should dictate. But it is needless to pursue this line of thought further. The evils attendant upon such practices have been too often and too clearly explained to need argument or illustration here. The statute forbids the treasurer to pay out money except upon a duly-authenticated warrant, and neither law nor equity will help him to disobey the statute with impunity. The instruction as asked was not the law, and as modified contained no error of which the plaintiffs in error can complain.

The second matter of error claimed is, that the verdict is against the evidence. The point here is this: The treasurer served two terms. The bond sued on was given for his second term, commencing' in May 1872. It is claimed that

the misappropriation of funds was in December 1871, and therefore not covered by this bond. Of .course, if the misappropriation was in 1871, the sureties on this bond were not responsible. An examination of the testimony fails to leave in our minds a conviction as to when the misappropriation took place. The order is dated May 7th 1873. It refers to a note given by the sub-contractors, and purports to be on account of that note. The note, which is both a receipt and note, bears date December 1st 1871. But the note is for $2,000, and calls for six per cent. interest. The order is for $2,040. Snyder, the treasurer, testifies that the order was given for the note. Why did it not include all the interest? He says that the accrued interest was included in a settlement made in May 1872; but still there was a year's interest subsequent to that settlement. Again, in reference to the loan itself the testimony is not clear. It would seem that a loan of $10,000 to H. M. Holden of Kansas City First National Bank, was made in December 1871, and tacitly authorized and approved by the board. Snyder testifies that a part of this $10,000 supposed to have been loaned to Holden was really the loan to the sub-contractors, and that the note was given at the time the loan was made. But he never presented the note until the final settlement in May 1873, though he says some of the board knew of its existence prior thereto. Again, he testifies that he informed the school board of loaning Holden the $10,000 about the time of making the loan, and that he made the loan December 10th 1871. This would make the note dated ten days before the loan. Again, it appears from his testimony that he had some private transactions with the sub-contractors, and that they owed him some money. Still again, the attention of the learned counsel does not seem to have been called to the time of this misappropriation until the filing of the motion for a new trial. At least, no reference is made to the matter in either the instructions given or those refused. The district court which heard the testimony overruled the motion for a new trial based upon this ground. Under these circumstances we are unwilling to hold that it

is clear that the misappropriation which unquestionably was not disclosed to or known by the board until during the life of the bond sued on was actually made prior to its execution. The custody of the funds during both the year covered by this bond, and that immediately prior, was in one of the defendants, the treasurer. The board prove a defalcation made manifest toward the close of, the last year. The settlement made at the close of the first year was satisfactory, and showed nothing wrong. While now the assertion of the treasurer, unsupported by other testimony, (for neither the contractor nor the sub-contractors are witnesses, and no other witness testified to any knowledge of the transaction,) is, that the misappropriation was during the first year, yet there are many circumstances tending to discredit this assertion, and we cannot say that those circumstances are not sufficient to warrant the verdict.

We are compelled therefore to order an affirmance of the judgment.

All the Justices concurring.