(51 Misc. Rep. 121.)

### ANNIS v. McNULTY et al.

(Supreme Court, Trial Term, Saratoga County.  June, 1906.)

1. TOWNS—TOWN CLERK—COMPENSATION.

   Under Laws 1886, p. 731, c. 502, providing for an annual salary to the town clerk to be in full for all services and duties required of him by law, he is not entitled to any extra compensation for receiving, filing, and computing the amounts of poor orders issued by the overseer of the poor for outdoor relief; it being part of his official duties.

2. SAME.

   Tax Law, Laws 1896, p. 803, c. 908, §§ 20, 21, makes it the duty of the assessor to procure certain information as to sale or exchange of property and the death of owners, but does not authorize the assessor to employ assistants in the performance of the duties. *Held* that, in the absence of statutory authority, the town clerk is not authorized to receive any payment for assistance rendered by him to the assessors in the performance of such work.

3. SAME—TAXPAYERS' ACTIONS.

   Where payments are made to a town clerk in excess of the salary granted by the statute for his services, it constitutes waste and injury to the funds of a town, within Laws 1887, p. 885, c. 673, as amended by Laws 1892, p. 620, c. 301, authorizing taxpayers' actions, and the money so paid may be recovered.

4. SAME—OVERPAYMENT TO CLERK—RECOVERY.

   Where a supervisor paid a town clerk excise money in his hands for work in the town clerk's office, which work was fully compensated for by his statutory salary, the liability of the town clerk to repay such sum is not affected by the fact that the supervisor included such payments in his account rendered to the town board, and that the statement was certified by the town board under Laws 1890, p. 1233, c. 569, § 161, as such an action is not an adjudication of the validity of the claims if they have not been presented to and audited by the board before payment by the supervisor, as required by Town Law, Laws 1890, pp. 1233, 1237, c. 569, §§ 161, 162, 180.

5. SAME—TOWN SUPERVISORS—OVERPAYMENTS.

   Where a town supervisor made payments of claims against the town without first presenting them to the board for audit, he is liable therefor at the suit of a taxpayer.

6. OFFICERS—NEGLECT OF DUTIES—LIABILITIES.

   Laws 1892, p. 620, c. 301, § 1, providing that in certain cases specified the court may adjudge a colluding or defaulting official personally responsible, does not restrict such adjudication to officers found guilty of such collusion and defalcation, but applies to an officer who omits to comply with the legal requirements or fails in performance of a legal duty.

Action by Malcolm G. Annis against James D. McNulty and Michael S. Cummings.

Taxpayer's action to recover in behalf of the town of Saratoga Springs, moneys of the town alleged to have been wasted and misappropriated by the defendants as town officers.

Edgar T. Brackett (H. C. Todd, of counsel), for plaintiff.
John H. Burke, for defendants.

SPENCER, J.  This is a taxpayer's action brought pursuant to chapter 673, p. 885, Laws 1887, as amended by chapter 301, p. 620, Laws 1892, to recover for the benefit of the town of Saratoga Springs

certain moneys paid by the defendant McNulty, as supervisor, to the defendant Cummings. The defendant Cummings was town clerk. On the 17th day of May, 1902, he presented to the defendant McNulty a bill for $150 for services in "examining, correcting, and approving accounts against overseer of the poor, May, 1901, to May, 1902." This bill was on the same day paid by the defendant McNulty, as supervisor, out of the excise moneys in his hands. On July 26th, following, he presented another bill for $150 for services in "making copy of town assessment roll for 1902," and this also, on the same day, was paid in like manner. On September second, following, he presented another bill for $350 for services in "making, correcting and completing assessment roll for town of Saratoga Springs for year 1902," and this also, on the same day, was paid in like manner. Some months later, at the close of the current year, the defendant McNulty, as supervisor, presented his account to the town board for moneys received and disbursed. It contained these items. The board certified that the account was correct. The complaint alleges that the presentation and payment of these claims were illegal, fraudulent, and collusive, and constituted a waste and injury to the funds of the town within the contemplation of the statute. As to the charge of fraud and collusion, the evidence does not support a finding; and a recovery herein, if had, must rest upon the charge of illegality constituting waste or injury to the public funds. People v. Wood, 121 N. Y. 522, 24 N. E. 952. As the defendants occupied different official stations and held different relations to the claims, their responsibility is governed by different rules. We must therefore consider them separately.

1. The defendant Cummings was town clerk. His general duties are prescribed by the town law. Town Law, Laws 1890, p. 1223, c. 569, § 83. His annual salary is fixed by statute (Laws 1886, p. 731, c. 502), and is declared to be "in full for all services rendered by him for the town of Saratoga Springs, and for any board or boards, officer or officers of said town, and for all public duties required of him by law." Assuming that this act has reference alone to service performed by him in his official capacity, nevertheless, when he claims other compensation, the burden is on him to show that the service rendered did not belong to his office.

It appears from the evidence that the first bill presented was for work performed in the town clerk's office in receiving, filing and computing the amounts of certain poor orders issued by the overseer of the poor for outdoor relief. To my mind, this was the ordinary routine work of his office and part of his official duties. Sooner or later the orders must be filed with him, and if he and the supervisor chose to have them filed in the first instance and a verified bill go to the supervisor, it was a matter within their discretion. It did not change the character of the service. The work in making out bills for claimants and taking verifications thereto was not performed for the town but for the claimants. These claims, therefore, did not constitute legal charges against the town, and the defendant Cummings was not entitled to the money paid to him thereon. Matter of Town of Hempstead, 36 App. Div. 321, 55 N. Y. Supp. 345; affirmed 160 N. Y. 685, 55 N. E. 1101; People

ex rel. v. Town Auditors, 24 App. Div. 579, 49 N. Y. Supp. 525; affirmed 156 N. Y. 689, 50 N. E. 1120; Haswell v. Mayor, 81 N. Y. 255; People ex rel. v. Jackson, 85 N. Y. 541. It appears from the evidence that the two other bills were for assistance rendered to the assessors in making and completing the assessment roll. Much of this service was incidental, rendered at odd occasions, running through the year, in keeping track of the sale or exchange of property, the deaths of owners and in making memoranda thereof preparatory for use by the assessors when they began their labors. He also assisted in copying the roll and in doing other clerical work.

The general law prescribing the duties of the town clerk is so general in its terms that it is difficult to determine the line which defines his field of service. The special act in relation to Saratoga Springs is still broader. The annual salary there provided for would seem to comprehend any and all service of a clerical character which he may render for any officer or board of the town. Tax Law, Laws 1896, p. 803, c. 908, §§ 20, 21, makes it the duty of the assessors to procure the information, which the defendant Cummings claims to have obtained, and to prepare the assessment roll. I have found no statute and have not been referred to any which authorizes, either in terms or by implication, the assessors to employ assistance in the performance of their duties. I perceive how such assistance might well be desirable not only for the assessors but for the town. There is no claim but that the services rendered were of the value charged, and I appreciate the hardship involved in denying compensation. But the question is not one of equity but of law. Did his demands for compensation constitute a legal claim against the town? In the absence of any statutory authority for his employment, I think the answer must be in the negative. Peck v. Belknap, 130 N. Y. 394, 29 N. E. 977. If the work was done at the request of the assessors (I fail to find proof of any express request for the year 1902), such request constituted no contract of employment binding upon the town, as they are in no sense agents for the town, making their implied or express contracts binding. Furthermore, the services rendered were of a clerical character, and, if rendered for the board of assessors, will be presumed to have been performed as part of his duties as town clerk within the intent of the special act by which he was paid an annual salary of $1,000. Therefore, if we regard the services as rendered under an employment by the assessors, we find no authority for such employment; and, if we regard them as clerical work rendered in the performance of his duties as clerk to the board of assessors, compensation therefor is provided by the payment of an annual salary. In either view a claim for compensation would not constitute a legal charge against the town. The words of Judge Dillon in his work on Municipal Corporations are pointedly applicable. He says:

"It is a well-settled rule that a person accepting a public office, with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter powers pertaining to the office are increased

and not his salary. Whenever he considers the compensation inadequate, he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay the foundation for extra compensation, would introduce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the Legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may and what may not, be considered strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse." Dillon Mun. Corp. (2d Ed.) § 172; Id. (3d Ed.) § 233.

The defendant Cummings can take nothing from the fact that the money paid to him was credited to the defendant McNulty upon the presentation of the latter's account to the town board. It is sufficient here to say that the claims of Cummings were never before the board for audit. If I am correct in the foregoing conclusions, then the payment of the public money to the defendant Cummings upon these claims was illegal and constituted waste and injury to the funds of the town within the intent of the statute under wihch this action is brought. This, I think, is well within the language of the statute and is supported by authority. People v. Fields, 58 N. Y. 491; Wood v. Mayor, 73 N. Y. 556.

2. We come now to the cause of action against the defendant McNulty. As in the case of the defendant Cummings, the charge of fraud and collusion is not sustained; and a recovery, if any, must depend upon the illegality of his act in disbursing the money, this constituting waste and injury to the funds in his custody. For the purpose of this inquiry we must also assume without further comment that the claims were illegal. The defendant McNulty was supervisor. As such he received into his custody the excise money belonging to the town. Liquor Tax Law, Laws 1896, p. 55, c. 112, § 13. In reference to the use which shall be made of this money, the statute provides:

"Such revenues shall be appropriated and expended by such town or city, in such manner as is now or may hereafter be provided by law for the appropriation and expenditure of sums received for excise licenses or in such other manner as may hereafter be provided by law; and any portion of such revenues not otherwise specifically appropriated by law may be applied to the ordinary expenses of the city or town."

This provision specifies the purposes to which the money may be applied but is silent as to the way and manner it shall be disbursed. We may therefore conclude that the supervisor in paying out the same is governed by the laws in respect to the audit, allowance, and payment of town charges. Without quoting the town law at length, it may be stated in brief that it provides for a board of audit, which is given jurisdiction (a) to pass upon the accounts of all town officers who receive or disburse moneys of the town by virtue of their office; (b) to audit by allowing or rejecting all charges, claims, and demands against the town. Town Law, Laws 1890, p. 1233, c. 569, §§ 161, 162. Also all town charges are required to be presented to the town board for audit. Town Law, § 180, subd. 7. The auditing board thus acts in two capacities. It audits the accounts of officers; it passes upon the merits of claims against the town. In the former, it acts only as an

auditing board; in the latter, it acts judicially. Gilbert, in his Manual for Supervisors (page 805), citing Osterhoudt v. Rigney, 98 N. Y. 222, and People ex rel. v. Board of Audit, 74 Hun, 83, 26 N. Y. Supp. 122, says:

"No claim against a town is obligatory upon or is enforcible against the town until it has been audited or examined and allowed. Its jurisdiction over a claim against the town is not only original but it is conclusive until brought under revision in another court in the manner prescribed by law."

The duty of the supervisor in respect to claims against the town is equally clear. The statute prescribes his duties in the following terms:

"Receive all accounts against the town which shall be presented to him and present the same to the town board for audit; except such accounts as he may be required by law to present to the board of supervisors." Town Law, § 80, subd. 5.

We see from this that the law not only provides a judicial tribunal to pass upon town charges, but makes it the duty of the supervisor to present to it for audit all such claims as may come to him. Touching the intent of this provision, Gilbert (page 275) says:

"The purpose of subdivision 5 of the above section is to require all claims against the town to be submitted in due form to the supervisor to be by him presented to the town board for audit, or to the board of supervisors, as the case may be."

He also says (page 274):

"The statute thus assumes that he (supervisor) is the legal custodian of the moneys of the town and chargeable with the duty not only of receiving and keeping them but also of guarding their disbursement." Bridges v. Board of Supervisors of Sullivan County, 92 N. Y. 570.

There is no statute which in terms or by implication authorizes a supervisor to disburse the moneys of the town in payment of claims against the town, before such claims have been examined and allowed by the town board. Such payments must therefore be regarded as unauthorized and the disbursements illegal. Rogers v. City of Buffalo, 123 N. Y. 173, 25 N. E. 274, 9 L. R. A. 579; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809. The general rule concerning the duty and liability of disbursing officers is well stated in a work of recognized authority in the following terms:

"It is the duty of a public officer charged with the custody and expenditure of public money to keep it safely and disburse it in accordance with law. For any failure to do so he and the sureties upon his official bond are liable." 23 Am. & Eng. Ency. of Law (2d Ed.) 372.

A few examples of the application of this rule may be useful. In Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612, which is the leading case in this state, the court held that a public officer having the custody of public funds is ex virtute officii insurer of the same and liable for a loss although occurring without fault or negligence. There the court made practical application of the rule to a case where the funds were lost by reason of the bankruptcy of the bank where they had been deposited. In City of Johns-

town v. Rodgers, 20 Misc. Rep. 262, 45 N. Y. Supp. 661, it was applied in a case where the public funds were stolen from an office safe furnished by the municipality. In Taggart v. State, 49 Ind. 42, the county treasurer, after expiration of his term, but before settlement of his accounts, paid a warrant drawn upon his successor. Although no question was made as to the validity of the warrant or the legality of the claim, such payment was held to be illegal, and he was required to reimburse the town for the money so paid out. In McKee v. Monterey Co., 51 Cal. 275, the county treasurer in settling his accounts with the State Comptroller charged for extra services, which the Comptroller allowed. It was held that the Comptroller exceeded his authority, and that the county treasurer must account for the amount. In Snyder v. Board of Education, 16 Kan. 542, the treasurer of the board was authorized to pay only on warrants drawn by the board; but he made a payment to a person with whom the board had a contract to build a schoolhouse, and for which no warrant was issued, and he was required to make good the money so paid out.

It is well to note that the hardship of the rule so adhered to in these decisions is fully recognized, and that the courts rest their decisions upon public policy. If, in the language of the Court of Appeals in the Tillinghast Case, it is against public policy to permit an official intrusted with the custody of public funds to excuse its loss by reason of the depredations of burglars or the defalcations of banks, on the ground that it would "open the door for the perpetration of frauds in numberless ways impossible of detection, thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents," is it not equally against public policy to recognize as an excuse the payment of claims clearly illegal? But, whatever may be the rule as evidenced by the decisions, I think the question is settled by the statute (Laws 1892, p. 620, c. 301) under which this action is brought. As I read that statute it authorizes a taxpayer to maintain an action to restrain an officer from doing an illegal official act or any act that will occasion waste or injury to the funds of the municipality of which he is an officer. It also authorizes an action "to restore and make good any property, funds, or estate lost by any illegal official act or by any act that occasions waste or injury to the public funds." A preventive right of action may therefore rest upon illegal official action alone, and a compensatory right of action upon illegal official acts occasioning loss. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Govers v. Board of Supervisors, 171 N. Y. 403, 64 N. E. 193; Ayers v. Lawrence, 59 N. Y. 192. But it is said that, in a subsequent part of the section, it is left to the discretion of the court whether judgment to make good or for restoration shall be rendered and that such discretion applies only to officers found guilty of collusion or defalcation. But, as I read the history of the statute and consider the official rascality which it was intended to prevent and rectify, I am inclined to think that the construction thus put upon it is too narrow and technical. The term "defaulting official" as employed in the statute, should be construed in its broad sense and as including every official who fails to perform his full

duty. United States v. Prescott, 3 How. (U. S.) 578, 588, 11 L. Ed. 734. It certainly was not employed for the purpose of restricting the power of the court to officers guilty of a particular offense. A defaulting officer is one who fails in the performance or fulfillment of an obligation or neglects or omits to comply with a legal requirement. The clause of the section wherein the words "discretion" and "defaulting official" occur has reference to the way and manner by which the court may enforce the right of action given in a previous part of the section, and is not intended to limit or cut down the right of action conferred in and by such previous part. But it is claimed that the subsequent audit and allowance of defendant's disbursements, including the sums disbursed in the payment of these claims, is a judicial determination of their legality and may not be questioned in this action. This demands attention. When a claim is presented to a town board for audit, its first duty is to determine whether it is a proper town charge, that is, whether it comes within either of the classes of claims mentioned in the statute. Town Law, § .180. If it does, then the board has jurisdiction to act, and its act, allowing or rejecting, is final, until reversed or modified by certiorari. People ex rel. McCabe v. Matthies, 179 N. Y. 242, 248, 72 N. E. 103. If it does not belong to one of these classes, the board has no jurisdiction, and any action it may take is void. Board of Supervisors v. Ellis, 59 N. Y. 620, 624.

A distinction, however, must be noted. The claims of the defendant Cummings were not before the board. Those bills, if there, were there simply as vouchers for payments already made. The illegal act or the waste or injury had already been done. The allowance by the board of the amounts as proper disbursements was not an adjudication as to the validity of the claims. In passing upon the account of McNulty, the board acted strictly as an auditing board to determine whether his account was correct. The certificate made by the board and annexed to his account put in evidence purports to be only this. There was no attempt to allow or disallow the items as town charges. That subject was not before the board. Hence the claims of the defendant Cummings, which the defendant McNulty paid, have never been acted upon by the board. If otherwise, then a supervisor might pay all bills as fast as presented and include such payments as a part of his disbursements. Such clearly is not the intention of the statute nor the practice in town affairs. The inclusion of these items in his account as disbursements was an evasion of the statute.

The defendant contends also that the certification of McNulty's account by the town board was judicial in its nature and res adjudicata so far as he is concerned. He cites Bank of Staten Island v. City of New York, 68 App. Div. 231, 74 N. Y. Supp. 284; affirmed 174 N. Y. 519, 66 N. E. 1104; Mooers v. Smedley, 6 Johns. ch. 28; Osterhoudt v. Rigney, 98 N. Y. 232; Govers v. Board of Supervisors, 171 N. Y. 403, 64 N. E. 193; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263. I have examined all these cases, and have had occasion to refer to most of them in previous parts of this opinion and do not

think they are applicable to this question now under consideration. I do not regard the certification by a town board, to the effect that an officer's account of receipts and disbursements is correct under the provisions of section 161 of the town law, is a judicial determination. The board is required simply to state the account and file the same with the vouchers for public inspection. It is only when the board is acting under the provisions of section 162 that its determinations are quasi judicial and conclusive. This opinion has been drawn out to an unusual length; but is possibly justified by the novelty and importance of the questions involved. If the conclusions to which I have arrived are correct, judgment must be entered against both defendants for the amount of the sum of money illegally paid and received, with interest thereon from the time of payment, together with costs.

The plaintiff may prepare findings of fact and conclusions of law in conformity with this opinion.

Ordered accordingly.